UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY – 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LUIS HUMBERTO BARBOSA          )
REG. 29500-053 UNIT 5803       )
FCI FORT DIX – WEST            )
P.O. BOX 7000                 )
FORT DIX, N.J. 08640,          )
　　　　　Plaintiff-PRO SE,      )
　　　　　　　　　　　　　　　　　)
　　　Vs.                       )
　　　　　　　　　　　　　　　　　)
JANICE G. McLEOD, Senior Counsel )
U.S. Department Of Justice      )
Office Of Information And Privacy )
Washington, D.C. 20530,         )
　　　　　　　　Defendants.       )

Civil Case No.:_____

**COMPLAINT OF DECLARATORY
AND INJUNCTIVE RELIEF**

–and–

CASE NUMBER  1:06CV00867

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 05/09/2006

　　　1.　This is an action under the Freedom of Information Act (FOIA), Title 5 USC §552, to order the production and release of Federal Agency records consisting of Thirty-nine (39) pages, that including the chemical signature breakdown analysis report returned on the alleged drug or substance seized in plaintiff's criminal case withheld by the herein defendants, pertinent to Luis Humberto Barbosa (plaintiff).

　　　2.　This Court has jurisdiction over this action pursuant to 5 USC §552(a)(4)(B).

　　　3.　Plaintiff, Luis Humberto Barbosa, is a Federal prisoner and the requester of withheld records.

　　　4.　Defendants, Janice G. McLeod, the Office of Information and privacy to the Department of Justice of the U.S. government, have possession and control over the records that plaintiff seeks.

**RECEIVED**

APR 2 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

5. By letter dated March 24, 2005 addressed to the Assistance U.S. Attorney, plaintiff requested copy of the chemical signature breakdown analysis report in his criminal case. U.S. v. Barbosa, 51 F.Supp.2d. 597 (E.D.Pa. 1999).

6. By letter dated March 30, 2005, the AUSA responded to plaintiff's request  stating that she did not have such report and advised to check with the Laboratory (see exhibit "A").

7. By letter dated April 7, 2005 addressed to Mr. Howard L. Dobres, Director for the DEA Northeast Regional Laboratory, plaintiff requested be provided with the chemical signature breakdown analysis report returned to the alleged drugs or substance in his criminal case. Mr. Howard L. Dobres failed to respond to plaintiff's request (see exhibit "B").

8. By FOIA request dated May 28, 2005 addressed to Mr. Howard L. Dobres, Director to DEA Northeast Regional Laboratory, plaintiff requested copy of all respective filed records done or returned in his criminal case withheld by this Federal Agency, that including copy of the chemical signature analysis breakdown report returned on the alleged substance or drug in his criminal case (see exhibit "C").

9. On or about September 08, 2005, Federal Agency for the drug Enforcement Administration to the Department of Justice, produced and released the requested records/documents except that they withheld Fourty (40) pages and the chemical signature breakdown analysis report from the records (see exhibit "E").

10. By appeal letter dated September 26, 2005, plaintiff appealed the Fourty (40) pages and chemical signature breakdown analysis report

withheld by the Federal Agency under the Department of Justice (see exhibit "F").

11.  By letter dated March 08, 2006, Janice G. McLeod, Senior Counsel to the Office for Information and Privacy, decided the appeal by releasing portion of one (1) additional page from the withheld records. Thirty-nine (39) pages and the chemical signature breakdown analysis report are still withheld by the agency (see exhibit "G").

12.  Following aforementioned  of events supported by exhibits are in support of plaintiff's Complaint of Declaratory and Injunctive Relieve, to show this Court overwhelming and undisputable inconsistancies perpetrated by government Officials during plaintiff's preliminary hearings in his criminal case, which lead to his benefit of doubt as to the actual "type of drug or alleged substance" seized in his case:

(a)  On July 18, 1998, after plaintiff had traveled to Aruba, Nether-land Antilles, and returned to the U.S. arriving at JFK International Airport, was driven to the Hilton Hotel in Phaladelphia, PA. by two Philadelphia based DEA paid Informants, was arrested in posse-ssion of 99 cylindrical pellets allegedly containing <u>heroin</u>.

(b)  These pellets were collected by DEA Special Agent Carl D. Giardinelli at the Hotel room the day of the arrest and subse-quent given to DEA Special Agent Phillip G. Devlin who trans-ported the evidence bag to the DEA Field Division in Philadel-phia, PA. (see exhibits "H", paragraphs 13-25 and paragraphs 1-17 on page 76).

(c)  While at the DEA Field Division after having arrived from Hotel, Devlin handed the evidence bag back to Giardinelli for processing them and secure them (see exhibit "H", paragraphs 8-12 on page 76).

(d)  Giardinelli processed the alleged "drug" or "substance" but <u>did not field test it</u> because it was **HEALTH HAZARD AND HEALTH** <u>RISK</u> (see exhibit "C", report of drug property). This report states: **" BIOHAZARDOUS" – NOTE: "NOT FIEL TESTED!!"** This report was prepared on July 18, 1998, the same day of the arrest.

**(e)** Subsequently, Devlin who was present for plaintiff's arrest, who had transported the evidence bag to the DEA Field Division, who witnessed the heat sealing of the evidence bag allegedly containing **heroin**, and who knew that the alleged substance or drug was <u>not field tested</u>, prepared on July 20, 1998 his com**plaint** supported by sworn affidavit falsely accusing plaintiff for possession of heroin. His affidavit at paragraph 10 states that they recovered a **white** **powder** and that the powder <u>field tested positive for heroin</u>. Subsequent based on his complaint and sworn affidavit, U.S. Magistrate Judge Carl Sandra Moore Wells issued an arrest warrant against plaintiff to illegally holding him for heroin (see exhibit "I").

**(f)** Subsequently, on or about August 13, 1998, Devlin testified under sworn testimony before the grand jury, and again defrauded his way by misleading the grand jury from the truth as to what had previously transpired in plaintiff's case on July 20, 1998 before U.S. Magistrate Judge Carl Sandra Moore Wells who issued an arrest warrant against plaintiff holding him illegally for <u>heroin</u> (see exhibit "J").

**(g)** Giardinelli later testified in plaintiff's jury trial affirming that the alleged drugs were <u>not field tested</u> (see exhibit "K", paragraphs 18-25 and paragraphs <u>1-4</u>). Giardinelli maintained custody of the drugs until transferred to DEA Northeast Regional Laboratory on July 20, 1998. In his testimony he stated that he called Devlin to witness his sealing of the evidence bag by his initials at the conclusion of the processing of the drugs (see exhibits "H", paragraphs 13-17 and exhibit "K", paragraphs 7-13 on page 65).

**(h)** BY prosecutor permitting Devlin to committing fraud before the grand jury, led to the misleading of the grand jury to returning an indictment charging plaintiff for cocaine base, a schedule II **"non-narcotic"** controlled substance (see exhibit "L").

**(j)** Recently discovered evidence under the Freedom of Information on or about September 08, 2005. It shows under the chemist work sheet describing the evidence received by the Laboratory as a **composed** <u>**tarnish/brown**</u> **powdery substance**, not a **white powder** as Devlin stated at paragraph 10 in his affidavit in support of his complaint against plaintiff (see exhibit "O" and exhibit "I", affidavit at paragraph 10).

13.    There were also many inconsistancies in the trial testimony of forensic chemist, Mr. Charles L. Cusumano, who testified on behalf the government. Cusumano testified that he conducted a series of tests and none tested positive for cocaine base, "only that there was a possibility or likelihood of cocaine base being present (see exhibit "N", paragraphs 1-4 and 12-22).

14. Cusumano concluded that one last test returned positive for cocaine base with 85% concentration of purity. Plaintiff asserts that Mr. Cusumano's testimony does not pass the smell test of a truthful testimony... because, what substance that is 85% pure would not test positive for its identity at any individual or presumptive test?

15. Based upon the chemist misleading and/or inconclusive trial testimony and chemist work sheet indicating the alleged substance being composed of tarnish/brown powdery substance, plaintiff asserts that the substance only points into one direction as possibly being composed of **dried ground-up coca tie leaves** (ERYTHROXYLON COCA); that which is used for medicinal purposes, substance which is totally different than what plaintiff was charged under the illegally obtained indictment charging plaintiff for cocaine base, a schedule II "non-narcotic" controlled substance.

16. Also the District Court in plaintiff's criminal case was not certain as to the real identity of the alleged substance or "drugs" in his case because the government failed as well as the jury, to prove the identity neither the amount. U.S. v. Barbosa, 51 F.Supp.2d 597 (E.D. Pa. 1999). This was reflected by the Court in its ruling at page 598: (see exhibit "O").

> The Court – "Two vexing legal problems are at the center of Luis Humberto Barbosa's sentencing calculus. First, should we sentence Barbosa for heroin, the drug that he intended to possess, or for **some form** of cocaine, which it turned out (to everyone's surprise) that Barbosa actually possessed?"

17. Plaintiff asserts that as Devlin defrauded his way before Magistrate Judge Carl Sandra Moore Wells for obtaining an arrest warrant for holding plaintiff illegally for heroin, and for later again defrauding his presentation to misleading the grand jury, and

forensic chemist being part of the group that testified for the government is questionable that he could have also defrauded his testimony before the Court.

18.    By Court ordering the production and release of the requested records will assist plaintiff's investigation to determining the truth about the actual identity to the alleged substance or drug in plaintiff criminal case that led to the sentence for a substance that plaintiff possibly did not possess.

19.    Plaintiff has statutory rights to the records that he seeks, and there is no legal basis for defendants refusal to releasing the requested records.

**WHEREFORE**, and for all of the above reasons, plaintiff prays that this Court:

(a)    Declare that the defendants' refusal to disclosing the records requested by plaintiff is unlawful.

(b)    Order defendants to make and release all withheld requested records available to plaintiff, that including the chemical signature breakdown analysis report returned on the alleged substance in plaintiff's criminal case.

(c)    Grant such order and further aid as the Court may deem just and proper.

I, Luis Humberto Barbosa, declare that the foregoing is true and correct to the best of his belief, and is giving under the penalty of perjury persuant to 28 U.S.C. §1746.

Respectfully submitted,

Executed on _April 14th_, 2006.

Luis Humberto Barbosa
29500-053 Unit 5803
FCI Fort Dix - West
P.O. Box 7000
Fort Dix, New Jersey 08640

Exhibit "B"

Mr. Luis H. Barbosa                                    Dated: April 7, 2005
29500-053 Unit 5803
FCI Fort Dix - West
P.O. Box 7000
Fort Dix, NJ 08640


                                    Howard L. Dobres, Lab. Director
                                    DEA Northeast Regional Laboratory
                                    99 Tenth Avenue, Suite 721
                                    New York, New York 10011


RE: <u>**Chemical Signature Breakdown Analysis Report**</u>
    <u>Laboratory No. 124175</u>

Dear Mr. Dobres:

    I am the defendant wherein the DEA of Philadelphia, PA., have
seized exhibit #1 marked with FDIN 981055535, allegedly for heroin
(see DEA-7 attached). This evidence was later received by this
Laboratory on July 20, 1998 for analysis, which was conducted and/or
completed on July 22, 1998, and finally approved on July 30, 1998.

    Apparently, a chemical signature breakdown analysis report of the
alleged substance was not afforded by this Laboratory for the records
in the case. This report is now imperatively needed for further
pleadings before the courts in the case.

    Would you please be so kind to mail me copy of said chemical
signature breakdown analysis report returned on the alleged subs-
tance.

    Thank you very much for your time and cooperation on this matter.


                                    Sincerely yours,



Cc: FILE



                                    06 0867



                              **FILED**

                           MAY - 9 2006

                    NANCY MAYER WHITTINGTON, CLERK
                          U.S. DISTRICT COURT

Exhibit "C"

## FREEDOM OF INFORMATION REQUEST

From: Luis H. Barbosa
      Reg. No. 29500-053 Unit 5803
      FCI Fort Dix - West
      P.O. Box 7000
      Fort Dix, New Jersey 08640

To:   Howard L. Dobres, Laboratory Director
      U.S. Department of Justice
      DEA Northeast Regional Laboratory
      99 Tenth Avenue, Suite 721
      New York, New York  10011

Re:   Request for all respective filed records done and/or returned pertaining
      to exhibit (1) marked by the DEA Northeast Regional Lab. with No. 124175.
      Specifically of interest, **The Chemical Signature Breakdown Analysis**
      **Report** returned on the substance (see DEA Form-7 attached).

Pursuant to Title 5 USC and any other relevant provision of your
agency's regulations   covering access to the right of freedom of
information, I hereby identify myself as: Luis H. Barbosa, defendant/
petitioner in the above FOIA request and the defendant who the alleged drugs
were zeised from before submitting them to the DEA Northeast Regional Lab. for
for full analysis that which completed on 7-22-1998.

I make this request for any and all materials for the entire cen-
tral file that your agency and any other agency(s) under your
supervison, as may be referred to below, has compiled to date,
or other branches thereof under your supervison may have desig-
nated in this file or any portion thereof, and the reason for each
designation, and the name of the person and his or her title
requesting same.

I would like for this request to be fulfilled and completed as
soon as time permits, pursuant to section (d), paragraph (1) of
the Privacy Act of 1974.  I would also like to have a copy of the
applicable regulations  of your agency(s) as may be provided for
by the Freedom of Information Act so that I may adhere to the
approved rules and  regulations for your agency(s)

As you know, investigation records compiled for law enforcement
agencies are no longer generally exempted from disclosure, but may
be inspected in camera by the U.S. Courts to determine whether
they fall within any of the six specified accepted categories of
investigations records subscribed in the Act.

If, for any reason, it is determined that portions of the
materials requested are exempted under some recognizable category
under the Freedom of Information Act, or the Privacy Act of 1974,
then I request that any such exempted materials be indexed and
itemized with detailed justification for any exclusion made under

**FILED**

06 0867     MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit "C"

the authority of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), or any similar authority. However, I do request to obtain those documents as soon as possible and in no way waive my right to the entire file, which, after I have examined the material you do send, I may still choose to review by appeal with respect to any excluded portions.

I do agree to pay for any fee incur for the search and copying of the requested documents.

Respectfully submitted,

Executed on May 28, 2005.

Luis H. Barbosa

**NOTE: This FOIA request is served under Certified Mail No. 7000 1670 0008 9587 8462**

EXHiBiT "C"

U.S. Department of Justice

# Certification of Identity



**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   __Luis Humberto Barbosa__

Current Address __FCI Fort Dix – West, Unit 5803, P.O. Box 7000 Fort Dix,__
__New Jersey 08640__

Date of Birth __November 05, 1959.__

Place of Birth __Dominican Republic__

Social Security Number [2]   __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__

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3] _____    Date __May 28, 2005__

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____
(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 1/31/98

FORM DOJ-361
FEB. 95

Exhibit "C" 124175

U.S. Department of Justice
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

Read Instructions on Reverse before completing.

| 1. HOW OBTAINED (Check) | | | |
|---|---|---|---|
| ☐ Lab. Seizure ☐ Money Flashed | ☐ Purchase [X] Seizure ☐ Free Sample ☐ Compliance Sample (Non-Criminal) | | |
| [X] Internal Body Carry ☐ Other (Specify) | | | |

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|
| CK-98-0095 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Philadelphia, PA. | 07-18-98 | MEDINA-FELIX Emilio et al |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL ☐ Case No. OR ☐ Seizure No. No. | 7. DATE PREPARED 07/18/98 | 8. GROUP NO. 2 |
|---|---|---|---|

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 1 | 98105535 | **Heroin** | 99 cylindrical pellets brown in color wrapped in wax paper, encased in a latex rubber material, further encased in a wax type coating. | 1013.86grm | 1013.86grm | |
| | | "BIOHAZARDOUS" FIELD TESTED!! | Pellets seized from swallower'S excretement. | "BIOHAZARDOUS" | | |

NOTE! - NOT?

| 16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ? ☐ NO (included above) [X] YES (if Yes, enter exhibit no. and describe original container fully) |
|---|

REMARKS:

On July 18, 1998, at approximately 10:30 a.m., Exhibit # 1 was seized from Luis BARBOSA at the Hilton Hotel (room # 517), located at 4509 Island Ave., Philadelphia, PA. S/A Carl Giardinelli, G/S John Adams and S/A Phil Devlin obtained Exhibit #1 at the Hilton Hotel. S/A Devlin transported Exhibit #1 to the Philadelphia FD. S/A Giardinelli processed and maintained custody of Exhibit #1 until transferred to the Northeast Regional Laboratory for analysis. S/A Giardinelli placed Exhibit #1 into the overnight vault of the Philadelphia FD for safekeeping on 7/18/98. Exhibit N-55 is the number for packaging of Ex. #1. No field test

| 17. SUBMITTED BY SPECIAL AGENT (Signature) S/A Carl P. Giardinelli | 18. APPROVED BY (Signature & Title) G/S John Adams |
|---|---|

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) 7-20-98 | 21. Print or Type NAME and Title S/A N. 171 |
|---|---|---|
| 22. SEAL ☐ Broken [X] Unbroken | 23. RECEIVED BY (Signature & Date) Dawn Michael 7/20/98  7/27/98 | 24. Print or Type NAME and TITLE Dawn Michael ST. |

**LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #1 contains l-cocaine base
Gross Wt: 1,014 g    Net Wt: 882.0 g

N238c:

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 01 | 124175 | l-cocaine base | 85 | % | | 749.7g | 879.9g |

| 34. ANALYST (Signature) CHARLES L. CUSUMANO | 35. TITLE FORENSIC CHEMIST | 36. DATE COMPLETED 7/22/98 |
|---|---|---|
| 37. APPROVED BY (Signature) HOWARD L. DOBRES  7/30/98 | 38. TITLE LABORATORY DIRECTOR | 39. LAB. LOCATION NEW YORK |

DEA Form - 7
(Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

1 - Prosecution



U.S. Department of Justice
Drug Enforcement Administration

Exhibit "E"

**SEP 0 8 2005**

Washington, D.C.  20537

Case Number: 05-0995-P

Subject:  BARBOSA, LUIS (LAB ANALYSIS #124175)

LUIS H. BARBOSA
P.O. BOX 7000
FORT DIX, NJ  08640

Dear LUIS H. BARBOSA:

    Your Freedom of Information/Privacy Act request seeking information from the Drug Enforcement Administration has been processed.

    The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a.  Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption.  An additional enclosure with this letter explains these exemptions in more detail.

    The documents are being forwarded to you with this letter.

    The rules and regulations of the Drug Enforcement Administration applicable to Freedom of Information Act requests are contained in the Code of Federal regulations, Title 28, Part 16, as amended.  They are published in the Federal Register and are available for inspection by members of the public.

06 0867

**FILED**

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit "E"

2

If you wish to appeal any denial of your request, you may do so within sixty (60) days pursuant to 28 C.F.R. 16.9.  The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

> CO-DIRECTOR
> OFFICE OF INFORMATION AND PRIVACY
> FLAG BUILDING, SUITE 570
> WASHINGTON, D.C.  20530

For further information, see attached comments page.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

Exhibit "E"

Number of pages withheld:    40

Number of pages released:    37

Number of pages referred:    0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

Freedom of Information Act
5 U.S.C. 552

Privacy Act
5 U.S.C. 552a

[ ] (b)(1)      [ ] (b)(5)      [x] (b)(7)(C)          [ ] (d)(5)      [ ] (k)(2)

[x] (b)(2)      [ ] (b)(6)      [x] (b)(7)(D)          [x] (j)(2)      [ ] (k)(5)

[ ] (b)(3)      [ ] (b)(7)(A)   [ ] (b)(7)(E)          [ ] (k)(1)      [ ] (k)(6)

[ ] (b)(4)      [ ] (b)(7)(B)   [x] (b)(7)(F)

Exhibit "F"

FREEDOM OF INFORMATION "APPEAL LETTER"

FOI/PA Request No. 05-0995-P _____    Date: 9/26/2005

To: CO-DIRECTOR    From: Luis H. Barbosa
OFFICE OF INFORMATION AND    Reg. No. 29500-053 Unit 5803
PRIVACY, FLAG BUILDING,    P.O. Box 7000
SUITE 570, WASHINGTON, DC    Fort Dix, NJ  08640
20530

This is an "Administrative Appeal" under the Freedom of
Information Act, Title 5 U.S.C. § 552(a)(6), and pursuant to
28 C.F.R. § 16.8.

On 9/15/2005 _____ I received a letter from Katherine L.
Myrick _____ of your agency in which they failed to provide, as
originally requested, the signature breakdown analysis report
of the alleged substance. Although record was provided, fourty(40)
pages are withheld.
This reply indicated that an "appeal letter" could be
sent to you. I am enclosing a copy of my exchange of corres-
pondence with your agency so that you can see exactly what files
I have requested and the insubstantial grounds on which my re-
quest has been denied.

You will note that your agency has withheld the [entire]
or [nearly entire] documents that I requested. Since the FOIA
provides that "any reasonably segregable portion of a record
shall be provided to any person requesting such record after
deletion of the portions which are exempt,..." I believe that
your agency has not complied with the FOIA. I believe that
there must be additional segregable portions which do not fall
within the FOIA exemptions and which must be released.

Your agency has used the 5 U.S.C. 552(b)(2), (b)(7)(C), (b)(7)(D), (j)(2)
exemptions to withhold information. Fourty (40) pages are withheld
which are being appealed. Petitioner alleges that since there are
(3) or (4) types of cocaine bases, its imperative he be provided
with the signature breakdown analysis of the alleged substance to
to identify which of the cocaine bases the substance is. The Court was
not cleared as to the exact identity of the substance in the case.

If you choose to continue to withhold some of all of the
material which was denied in my initial request to your agency,
I ask that you send me an index of such material, (Vaughn Index,
see Vaughn v. Rosen, 484 F.2d 820, (D.C. Cir.) together
with the justification for the denial of each item which is still
withheld.

I expect a reply within the twenty working-day time limit
pursuant to Title 5 U.S.C. § 552(6)(A)(ii). Please be advised that
any refusal to comply with the FOI/PA requirements will lead to
a lawsuit.

Sincerely,

06 0867

Signature of Requestor

Enclosures:
    Copy of original FOI/PA request

**FILED**

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit "G"

**U.S. Department of Justice**

Office of Information and Privacy

Telephone: (202) 514-3642

Washington, D.C. 20530

MAR ⌄ 8 2006

Mr. Luis H. Barbosa
Register No. 29500-053
Federal Correctional Institution
Post Office Box 7000
Fort Dix, NJ  08640

Re:    Appeal No. 06-0069
        Request No. 05-0995-P
        BVE:GLB:KAM

Dear Mr. Barbosa:

You appealed from the action of the Drug Enforcement Administration on your request for access to records concerning yourself, specifically laboratory reports from your criminal case. I note that you have limited your appeal to the withholding of forty pages by the DEA.

After carefully considering your appeal, and as a result of discussions between DEA personnel and a member of my staff, I have decided to release portions of one additional page to you, a copy of which is enclosed. I am, however, otherwise affirming the DEA's action on your request.

These records are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.98(a) (2005).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to the records you requested.

The DEA properly withheld certain information that is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties;

06 0867

5 U.S.C. § 552(b)(7)(D), which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to disclose
the identities of confidential sources and information furnished by such sources and

FILED

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit "G"

-2-

5 U.S.C. § 552(b)(7)(F), which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to endanger the life or personal safety of an individual.

I have determined that this information is not appropriate for discretionary release.

Finally, I am denying your request that we itemize and justify each item of the information withheld. You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. See Judicial Watch v. Clinton, 880 F. Supp. 1, 10 (D.D.C. 1995).

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

By:

Janice G. McLeod
Senior Counsel

Enclosure

Exhibit # 32

Devlin - Direct

75

A.    Government's Exhibit 14 Luis Barbosa's United
States Passport.

Q.    I am going to show you Government's Exhibit 20 and
ask if you can tell us what that is.

A.    Government's Exhibit 20 is a scrap of paper I
removed from Mr. Barbosa's wallet containing a cell
phone number used by Felix Zorilla in Aruba or Felix
and Annie Piccone and the phone number to, I believe
it's the Holiday Inn in Aruba where he stayed when he
was down there.

         MS. SMITH:  May I proceed, your Honor?

         THE COURT:  Yes, you may.

Q.    Agent Devlin, are  you also the person who
transported the drugs from the hotel?

A.    Yes, I transported them from the hotel to the
Philadelphia Field Division Offices of the Drug
Enforcement Administration.

Q.    And what about the records?

A.    The records also.

Q.    I am now going to show you what has been marked
for identification as Government's Exhibit 12 and ask
if you can tell us what that is.

A.    Government's Exhibit 12 is the -- contains the
drugs that were seized in Mr. Barbosa's hotel room.

Q.    And could you please tell us where you received

1    that package?

2    A.    Yes, Special Agent Giardinelli handed it to me in

3    the hotel room.

4    Q.    And that was originally, is that correct?

5    A.    I'm sorry?

6    Q.    This was at the time of the arrest?

7    A.    That's correct, yes.

8    Q.    And what did you do with them?

9    A.    Well, I transported them along with other exhibits

10   back to the office.  Then I was involved in some other

11   activity so I handed them back to Agent Giardinelli

12   for him to process them and secure them.

13   Q.    And when did you see those drugs again after

14   that?

15   A.    He called me to witness his sealing of the drugs.

16   And I witnessed the sealing, and this indicated my

17   initials up here on the corner of the top seal.

18   Q.    Can you tell, would somebody be able to open that

19   bag, to your knowledge, without disturbing that seal?

20   A.    No, the seal is somewhat the worst for wear.  If

21   you turn it back and forth on the corner, it's cracked

22   here, but the heat-seal is intact and all the pieces

23   of the seal are there.

24   Q.    And to the best of your knowledge, the bag has

25   not been opened from the top since the time that you

06 0867

FILED

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CRIMINAL COMPLAINT

Exhibit "I"

AO 91, Rev. 11/82

# United States District Court

| | DISTRICT<br>Eastern District of Pennsylvania |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUIS HUMBERTO BARBOSA | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br><br>98 - 612 - M |

Complaint for violation of Title 21 United States Code § 841(a)(1) and (b)(1)(B)(I)

| NAME OF JUDGE OR MAGISTRATE<br>Honorable Carol Sandra Moore Wells | OFFICIAL TITLE<br>US Magistrate Judge | LOCATION<br>Philadelphia, PA |
|---|---|---|
| DATE OF OFFENSE<br>July 18, 1998 | PLACE OF OFFENSE<br>Philadelphia, PA | ADDRESS OF ACCUSED (if known)<br>608 W. 204th Street, Apt. 52<br>New York, NY 10034 |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Defendant did knowingly possess with intent to distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(I).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

### SEE AFFIDAVIT ATTACHED HERETO.

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title)<br>PHILIP G. DEVLIN |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Drug Enforcement Administration |

06 0867

| Sworn to before me and subscribed in my presence. | |
|---|---|
| SIGNATURE OF MAGISTRATE (1)<br>Honorable Carol Sandra Moore Wells, US Magistrate Judge | DATE |

1) See Federal Rules of Criminal Procedure rules 3 and 54.

FILED

MAY - 9 2006

A 1

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AFFIDAVIT

EXHIBIT "I"

1.      The undersigned affiant has been employed as a Special Agent for the Drug Enforcement Administration (DEA) for fourteen years. I am currently assigned to the DEA office in Philadelphia. During the time I have been employed by DEA, I have worked on hundreds of narcotics investigations, both in the United States and overseas, and I have participated in hundreds of arrests.

2.      The information contained in this affidavit is based upon my own observations and from discussions with other law enforcement officers.

3.      In May 1998 a confidential informant (CI), working under the direction of DEA, arranged for the purchase of one kilogram of heroin from a drug trafficker in Aruba. The trafficker told the CI that he would arrange to have a "swallower" bring the heroin into the United States and deliver it to Philadelphia. A swallower is an individual who ingests controlled substances, which have been wrapped in latex encased pellets in order to smuggle them from one country to another. Swallowers ingest the controlled substances in the exporting country, and then discharge the wrapped packages in the importing country. Each pellet usually contains approximately 10 grams of controlled substances.

4.      On June 11, 1998, the drug trafficker in Aruba supplied the CI with beeper number (917) 954-4447, and asked him to contact this number regarding a counterfeit United States passport. Luis Humberto Barbosa returned the page, and he and the CI agreed to meet in New York the following day. Barbosa has a federal arrest for possession of counterfeit obligations in 1989 in the District of New Jersey (disposition of that case has not yet been determined from the records available to me), and a federal conviction on January 31, 1991 for importation of controlled substances. Barbosa received a prison sentence of 45 months, to be followed by 5 years supervised release. He is currently believed to be on supervised release in New York. P/o AVRIEL GEORGE,

5.      On June 12, 1998, Barbosa and the CI met at LaFamilia restaurant at 171st Street and Broadway in New York. During the meeting, in addition to discussing the fraudulent passport, Barbosa also told the CI that he arranged for swallowers to travel to the Netherlands Antilles and bring narcotics into the United States.

6.      On July 6, 1998, Barbosa and the CI again met at LaFamilia in New York. Barbosa told the CI that he would bring the one-kilogram of heroin into the United States for a fee of $10 per gram plus expenses.

7.      On July 13, 1998, Barbosa traveled to Philadelphia to obtain $1600 in travel expenses from the CI.

A2

Exhibit "I"

8.      On July 17, 1998, the CI met Barbosa at JFK International Airport in New York, and returned with him to Philadelphia. The CI drove Barbosa to the Philadelphia Airport Hilton, Room 517, 4509 Island Avenue. Barbosa asked the CI, who was staying in an adjoining room, to obtain specific foods and juices so that Barbosa could more easily discharge the controlled substances.

9.      On July 18, 1998, at approximately 8:00 AM, Barbosa informed the CI that he had completed discharging the heroin.

10.      On July 18, 1998, at approximately 10:30 AM, Barbosa was arrested by DEA agents. At the time of his arrest, Barbosa was in his room at the Philadelphia Airport Hilton, in the process of cleaning the heroin packaging. 1013 grams of a white powder were recovered in Barbosa's room. (This weight includes the weight of the evidence bags. It is anticipated that this powder will weigh slightly less than 1 kilogram when it is weighed by the DEA laboratory without the weight of these bags.) This powder field tested positive for heroin.

11.      On July 18, 1998, after being informed of his constitutional rights, Barbosa made a statement in which he admitted his role in importing the heroin described above into the United States.

Based upon the above evidence, I have probable cause to believe that Luis Humberto Barbosa did knowingly possess with intent to distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(i).

_____
Philip G. Devlin
Special Agent, Drug Enforcement Administration



_____
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE

A3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Exhibit " I "

UNITED STATES OF AMERICA

v.

**LUIS HUMBERTO BARBOSA**

### WARRANT FOR ARREST

CASE NUMBER:

To:    The United States Marshal and any Authorized
       United States Officer

YOU ARE HEREBY COMMANDED to arrest    **LUIS HUMBERTO BARBOSA**

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Violation notice  ☐ Probation violation petition

charging him or her with (brief description of offense)

On July 18, 1998, knowingly possessing with intent to distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule 1 narcotic drug controlled substance.

In violation of Title 21 United States Code, Section(s) 841(a)(1) and (b)(1)(B)(I).

| | |
|---|---|
| Carol Sandra Moore Wells | United States Magistrate Judge |
| Name of Issuing Officer | Title of Issuing Officer |
| | ▓▓▓▓▓▓▓▓▓▓▓▓ PA |
| Signature of Issuing Officer | Date and Location |

Bail fixed at $ _____  by _____

Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| | **PHILIP G. DEVLIN** | |
| DATE OF ARREST | Drug Enforcement Administration | |

A4

*Exhibit (J)*    1

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

BEFORE THE FEDERAL GRAND JURY

- - -

Stenographic transcript of proceeding and evidence presented before the Federal Grand Jury of the United States District Court for the Eastern District of Pennsylvania, Robert N.C. Nix Federal Building, 900 Market Street, Philadelphia, Pennsylvania, on Thursday, August 13, 1998, commencing at 11:01 a.m., before Diana M. Bogner, Court Reporter-Notary Public.

- - -

TESTIMONY OF:  PHILLIP DEVLIN

- - -

06 0867

PRESENT:

JUDY SMITH, ESQUIRE
Assistant United States Attorney

FILED

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

400 MARKET STREET
PHILADELPHIA, PA 19106

**KNIPES-COHEN**
COURT REPORTING SERVICE

PHONE:
(215) 928-9300



1    Philadelphia.  They checked into rooms we

2    previously arranged for.  The informant and

3    Barbosa had connecting rooms.  Barbosa went into

4    his room and the informant went into his.  Barbosa

5    asked to be provided with food and juice and fruit

6    to help him pass the heroin and was provided with

7    it.

8    Q.    Was provided with --

9    A.    The juice and food --

10   Q.    -- that he had asked for?

11   A.    Yes.

12   Q.    Drawing your attention to July 18, did

13   anything happen with regard to this case on that

14   date?

15   A.    Yeah.  By about 8 o'clock in the morning on

16   Saturday the 18th, Barbosa had passed all 99

17   pellets of heroin.  And at 10:30 that morning he

18   was arrested in his room with the heroin.

19   Q.    Were the pellets collected by DEA?

20   A.    Yes, with gloves.

21   Q.    Were they sent to the laboratory?

22   A.    They were sent to the DEA Northeast

23   Regional Laboratory and they were examined there

24   and the 99 pellets of heroin were found to contain

25   cocaine base, approximately 882 grams net weight

400 MARKET STREET
PHILADELPHIA, PA 19106

**KNIPES-COHEN**
COURT REPORTING SERVICE

PHONE:
(215) 928-9300

PHILLIP DEVLIN                    Exhibit (J)  7

1   of cocaine base.

2   Q.     I take it there was no heroin whatsoever;

3   is that correct?

4   A.     None at all.

5   Q.     And it was all cocaine base; is that

6   correct?

7   A.     Yes, all of it.

8   Q.     I have no further questions.

9              MS. SMITH:  Do any of you have any

10  questions?

11             GRAND JUROR:  In dollar, how much

12  was that?

13             THE WITNESS:   How much was ...

14             GRAND JUROR:  All that base --

15             THE WITNESS:  It had been fronted to

16  us and it hadn't even -- it was part of something

17  else.  It just got fronted to us.  We didn't have

18  to pay for it.

19             GRAND JUROR:  What was the street

20  value of it?

21             THE WITNESS:   I really couldn't tell

22  you the current price per gram on crack.  I just

23  work heroin cases.

24  BY MS. SMITH:

25  Q.     Was there a negotiated price for the one

400 MARKET STREET
PHILADELPHIA, PA 19106

**KNIPES-COHEN**
COURT REPORTING SERVICE

PHONE:
(215) 928-9300

*Exhibit "K"*

65

Giardinelli - Direct

Q.    When you first put it in did it have the seal on the bottom?

A.    The seal on the bottom wasn't there.  I filled out the label here and the seal on the top was what I did and it was sent out.  This seal on the bottom was not there.

Q.    And when you put the seal on the top, did you do anything special with that?

A.    Well, we sign it.  We have a witness signature also.

Q.    And did you sign that?

A.    Yes, I did.  My name's on there, I think it's Special Agent Phil Devlin witnessed it.

Q.    Is the top of this bag heat-sealed?

A.    It's heat-sealed by a heat-sealer across the sticker.  That way if it's reopened we can see that it's been reopened through that seal, yes.

Q.    Ordinarily when you get a drug sample, do you do something to test and see what type of drug it is?

      If you believe you're buying heroin, would you test it for heroin?

A.    Absolutely.  What we would do, in a normal situation we would field test it.  But since it's biohazardous excrement from a body, we do not touch it because it could be a health hazard and health risk.

06 0867

**FILED**

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*A9*

Q.    So and this time it was not field tested, you just

placed it in a bag and sealed it, is that correct?

A.    Right, it was placed into the bag at the scene and

the bag was then given to Special Agent Phil Devlin.

Q.    And where did you physically seal it?

A.    Special Agent Devlin then transported this exhibit

to the Field Division.  And at the Field Division I

heat-sealed it there, weighed it and did the physical

analysis that we had to do for the 7A, for the 7,

excuse me.

Q.    When you say you did this for the 7, what is a 7?

A.    A DEA7 is a description of the evidence.  And it's

what we send to the lab to say what it is and that we

would like to analyze.  And it gives the weight of the

exhibit, the description of the exhibit, the bag it's

in and how much it weighs.  That's what's sent to the

laboratory, Northeast Regional Lab.

Q.    And what did you do with this after you processed

it?

A.    Basically the day of the arrest I processed it.

And then we have what's called an overnight vault.  And

I then placed it into the overnight vault at the

Philadelphia Field Division for safekeeping.

Q.    Can you tell whether anybody has tampered with

this top seal since you placed it in the bag, the

A 10

Exhibit "L"

401idict.lhb

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _98- 383_ |
| v. | : | DATE FILED: _8/13/98_ |
| LUIS HUMBERTO BARBOSA | : | VIOLATIONS: 21 U.S.C. § 841(a)(1) (Possession with intent to distribute cocaine base- 1 Count) |
| | : | |

## INDICTMENT

## COUNT ONE

THE GRAND JURY CHARGES THAT:

On or about July 18, 1998, in the Eastern District of Pennsylvania, defendant

## LUIS HUMBERTO BARBOSA

did knowingly and intentionally possess with intent to distribute 50 grams or more of a controlled

substance, that is, approximately 882 grams of a mixture or substance containing a detectable

amount of cocaine base, a Schedule II non- narcotic controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(iii).

A TRUE BILL:

06 0867

_____

FOREPERSON

_(signature)_

MICHAEL R. STILES
UNITED STATES ATTORNEY

**First Assistant U.S. Attorney**

**FILED**

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A 5

Exhibit "M"

U.S. Department of Justice
Drug Enforcement Administration

**FORENSIC CHEMIST WORKSHEET**

Page ___ of ___

| RECEIVED | | 3. SEALS | 4. FILE NO. / EXHIBIT NO. / LAB. NO. |
|---|---|---|---|
| 1. From ▓▓▓ | 2. Date ▓▓▓ | ☒ Intact  ☐ Broken  ☐ None | CK-98-0095 /01/124175 |

**5. DESCRIPTION OF EVIDENCE**

one HSPEE which contained another PEE which contained 94 cylindrical shaped objects wrapped in wax like paper which contained a compressed tanmilk/brown powdery substance. There were also 5 cylindrical objects wrapped in rubber → clear plastic → wax paper which contained a compressed tanmilk/brown powdery substance.

(Total of 99 cylindrical objects).

**6. SUMMARY OF FINDINGS**

Ex #01 contains l-Cocaine Base.

GW → 1,014 g
NW → 882.0 g

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 01 | 124175 | l-Cocaine Base | 85 % | 749.7 g | 879.9 g |
| | | | | | |
| | | | | | |

**13. RESERVE EVIDENCE**

06 0867

Ex #01 was sealed, placed back into original PEE along w/ original packaging + transport objects. The PEE was resealed + returned to the E.J.

**FILED**

MAY – 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 14. FORENSIC CHEMIST'S SIGNATURE ▓▓▓ | 15. DATE REPORTED ▓▓▓ | 16. ▓▓ BY (Initials) & DATE 6/23 |

**17. REMARKS:**
- 4.0 hr
- 9041.0000

DEA Form – 86
(Aug. 1997)

All previous editions are OBSOLETE.

8/12/98    (64)

1    Q    Which color test determined that?

2    A    I performed a series of color tests, and all of

3    them combined helped indicate the presence of, the

4    possibility of cocaine base being present.

5    Q    O.K.  In other words, that the tests are a

6    series, they all go together, so that the final result

7    indicates to you that it's cocaine base?

8    A    They are all individual tests and then based on

9    the results of each of those individual tests, my

10   conclusion was that the likelihood of cocaine base was

11   present.

12   Q    O.K.  But you needed the result from each

13   individual test all put together to determine that it

14   was cocaine base.  There wasn't one particular test

15   that determined that it was cocaine base.  Is that

16   fair to say?

17   A    With respect to the color tests or the

18   presumptive test and the microcrystalline?

19   Q    Yes.

20   A    Again, not that positively there was cocaine

21   base.  Just the likelihood of it being present was

22   there.

23   Q    O.K.  Can you explain to the Jury the difference

24   between cocaine hydrochloride and cocaine base?

25   A    Cocaine base is the natural form of cocaine which

06 0867

FILED

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A 64

defendant to be sentenced to the higher guideline for "cocaine base." U.S.S.G. § 2D1.1(c), 18 U.S.C.A.

**3. Drugs and Narcotics ⚖133**

For purposes of applying statutory mandatory minimum sentence, "cocaine base" is not limited to "crack" cocaine, as under the Sentencing Guidelines, but instead refers to the ordinary scientific definition of the term. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1), 21 U.S.C.A. § 841(a)(1); U.S.S.G. § 2D1.1(c), 18 U.S.C.A.

See publication Words and Phrases for other judicial constructions and definitions.

**4. Drugs and Narcotics ⚖133**

Pellets ingested and subsequently excreted by defendant, who had one prior felony drug conviction and, in the instant case, was convicted of possession with intent to distribute a controlled substance, were "cocaine base" for purposes of the statutory mandatory minimum sentence, although government admitted that substance was not "crack" cocaine, forensic chemistry expert testified that it was not cocaine hydrochloride or "cocaine powder," but, instead, was cocaine base pursuant to the DEA's ordinary scientific definition. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1), 21 U.S.C.A. § 841(a)(1).

Judy Goldstein-Smith, Asst. U.S. Atty., United States Attorney's Office, Philadelphia, PA, for U.S.

Mark Wilson, Defender Association of Philadelphia, PA, for defendant.

DALZELL, District Judge.

*I. Background*

Well before the second ship *Peerless* delivered its Bombay cotton on the Liverpool quay,[2] and before "Rose" the cow was put out to pasture,[3] a feature of Anglo-American contract law has been the puzzle of mutual mistake of fact. While the "common law" of federal sentencing is of far more recent vintage, it, too, is sometimes bedeviled by similar problems.

Consider Barbosa's case. The record at trial was replete with evidence that the [text redacted] of Luis Humberto Barbosa's seizure of the ninety-nine pellets he excreted, the pellets were taken to the DEA laboratory where they were chemically tested to confirm that they indeed contained heroin. To everyone's surprise, the pellets contained 882 grams of 85% pure cocaine base and not heroin.[4]



1. For a more detailed analysis of cocaine in its various forms, see infra.

2. See *Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng.Rep. 375 (Ex. 1864).

3. See *Sherwood v. Walker*, 66 Mich. 568, 33 N.W. 919 (1887).

Compare *Sherwood v. Walker*, 66 Mich. 568, 33 N.W. 919 (1887) (holding that the seller of "Rose 2d of Aberlone" could avoid the sale of contract because while both the buyer and seller believed that Rose could not breed at the time of contract formation, at the time of the sale Rose was pregnant, thereby making Rose a...

Drug Enforcement Administration agents in this string operation (along with the defendant himself) sincerely believed that Barbosa would swallow pellets of heroin, smuggling near a kilogram, and then fly from Aruba to the United States where he would pass the contraband and be paid according to the number of pellets he swallowed. All went precisely according to plan, and after Barbosa's arrest and seizure of the ninety-nine pellets he excreted, the pellets were taken to the DEA laboratory where they were chemically tested to confirm that they indeed contained heroin. To everyone's surprise, the pellets contained 882 grams of 85% pure cocaine base and not heroin.[5]

Even as of the date of Barbosa's sentencing, the origins of this unusual mistake of fact will, it seems, always remain, in the words of the DEA's key informant, a "mystery." It is apparent that we are unlikely to learn the answer to this "mystery" because the likely perpetrator of the bait and switch, one Felix Zorilla, is said to be languishing in an Aruban jail after the authorities on that island found him with seventy-five kilograms of cocaine.

The identity of the substance at issue is highly consequential to this defendant because the Drug Quantity Table at U.S.S.G.

§ 2D1.1(c) and the mandatory minimum sentences under 21 U.S.C. § 841(b)(1) regard "cocaine base" with much greater severity than "heroin" or "cocaine." Thus, under the Guidelines 882 grams of heroin result in a base offense level of 30, see U.S.S.G. § 2D1.1(c) Table (6), 882 grams of "cocaine" result in a base offense level of 26, see U.S.S.G. § 2D1.1(c) Table (7), and 882 grams of "cocaine base" result in a base level of 36, see U.S.S.G. § 2D1.1(c) Table (2).[1]

Therefore, at a Criminal History III, Barbosa is facing three Guidelines-based sentencing ranges: 121-151 months for cocaine base and not heroin,[1] 78-97 months for cocaine, and 235-293 months for cocaine base.

Against these sentencing ranges, however, we must overlay the statutory mandatory minimum sentence applicable under 21 U.S.C. § 841(b)(1) because Barbosa has a prior felony drug conviction.[1] For one with a prior felony drug conviction, the mandatory minimum sentence is ten years for 882 grams of heroin, see 21 U.S.C. § 841(b)(1)(B)(i), ten years for the same amount of cocaine, see 21 U.S.C. § 841(b)(1)(B)(ii), but twenty years for the same amount of cocaine base, see 21 U.S.C. § 841(b)(1)(A)(iii).

5. Both before trial and after the close of the Government's case, Barbosa moved to dismiss the indictment because of the Government's outrageous conduct. Barbosa claimed that the grave dangers of swallowing pellets made it a per se violation of the process for the Government to engage any defendant in this activity. Although we are aware that at least two members of our Court of Appeals believe that the outrageousness doctrine of *United States v. Russell*, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), "is hanging by a thread," *United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998), the Supreme Court has not yet cut that thread. Applying *Russell* and *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978), we denied the motion in view of the absence of duress and the presence of defendant's free—indeed, eager—desire to swallow a kilogram of what everyone thought would be heroin pellets.

6. As Barbosa was convicted of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), the exact quantity of the controlled substance was of no moment at trial. See *United States v. Lewis*, 113 F.3d 487, 490 (3d Cir.1997) (holding that the Court determines the identity of the controlled substance at sentencing).

7. In addition, the Presentence Investigation Report, prepared May 6, 1999, and revised on June 1, 1999, recommends a two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Barbosa objected to this enhancement, and at the sentencing hearing we sustained that objection.

8. Notably, Barbosa's prior felony drug conviction in 1991 also involved the importation of a controlled substance by swallowing wrapped pellets of cocaine.

FILED

06 0867

MAY - 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT