## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUIS HUMBERTO BARBOSA      ) | |
| ) | |
| **Plaintiff,**    ) | |
| **v.**      ) | |
| ) | **Civil Action No. 06-0867 (CKK)** |
| ) | **(ECF)** |
| **U.S. DEPARTMENT OF JUSTICE**    ) | |
| **DRUG ENFORCEMENT ADMINISTRATION**  ) | |
| ) | |
| **Defendant.**    ) | |
| _____) | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, United States Department of Justice, Drug Enforcement Administration

(DEA), through and by undersigned counsel, hereby submits this Motion for Summary Judgment

pursuant to Fed. R. Civ. P. 56 on the grounds that no genuine issue of material fact exists and

Defendant is entitled to judgment as a matter of law.

Plaintiff should take notice that any factual assertions contained in the affidavits and

other attachments in support of defendant's motion will be accepted by the Court as true unless

the plaintiff submits his own affidavits or other documentary evidence contradicting the

assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992),

Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,

1

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In support of this motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities in Support and accompanying Statement of Material Facts Not In Dispute. A proposed Order consistent with this Motion is attached hereto.

Dated: October 11, 2006.

Respectfully submitted,

s/
_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney

s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LUIS HUMBERTO BARBOSA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-0867 (CKK) |
| | ) | (ECF) |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| DRUG ENFORCEMENT ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to LCvR 7(h), Defendant hereby submits the following statement.

1. By letter dated April 7, 2005, addressed to DEA's Northeast Regional Laboratory (NERL), the plaintiff requested the chemical signature breakdown analysis report for DEA laboratory number 124175. A copy of the plaintiff's letter dated April 7, 2005, is attached as Exhibit A to Leila Wassom's Declaration (Wassom Decl.).

2. By letter dated May 28, 2005, also addressed to NERL, the plaintiff requested any records pertaining to laboratory exhibit number 124175, specifically requesting the chemical signature breakdown analysis report, and any and all "materials" regarding himself. A copy of the plaintiff's letter dated May 28, 2005, is attached as Exhibit B to Wassom Decl.

3. By letter dated June 22, 2005, the DEA Freedom of Information Section (SARO) acknowledged the plaintiff's request and informed him that it would be processed in chronological order based on the date of its letter. The letter confirmed the plaintiff's obligation to pay all applicable fees up to $25.00. A copy of the DEA letter dated June 22, 2005, is attached as Exhibit C to Wassom Decl.

4.  By letter dated September 8, 2005, DEA released portions of 37 pages, including 14 pages of laboratory reports.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and section (j)(2) of the Privacy Act.  The 14 pages of laboratory information contain all of the information responsive to the plaintiff's request for laboratory information.  The only information withheld on the 14 pages are the names and/or initials of a DEA chemist and other DEA laboratory personnel,  pursuant to FOIA exemption (b)(7)(C).  A copy of the DEA letter dated September 8, 2005, is attached as Exhibit D to Wassom Decl.

5.  By attached undated letter, DEA informed the plaintiff that his name was mentioned in two other "related" files, and that if he wished the files to be processed, he must agree to pay an estimated search fee of $56.00.  The letter included a line for the plaintiff to sign to indicate that he agreed to pay the search fee.  The plaintiff subsequently returned the signed letter to DEA, and the files were processed.  A copy of the undated DEA letter with the plaintiff's signature on the appropriate signature line is attached as Exhibit E to Wassom Decl.

6.  By letter dated October 22, 2005, again addressed to the Northeast Regional Laboratory, the plaintiff again requested the chemical signature breakdown analysis report.  A copy of the plaintiff's letter dated October 22, 2005, is attached as Exhibit F to Wassom Decl.

7.  By letter dated October 28, 2005, DEA released portions of four pages to the plaintiff from his related files.  Three pages were withheld in their entirety.  Seven pages were forwarded to another agency.  A copy of the DEA letter dated October 28, 2005, is attached as Exhibit G to Wassom Decl.

8.  By letter dated October 28, 2005,  DEA forwarded eight pages to the U.S.

4

Immigration and Customs Enforcement (ICE) for consultation and return to DEA. A copy of the DEA letter to ICE, is attached as Exhibit H to Wassom Decl.

9. By letter dated November 21, 2005, ICE returned the documents, withholding the names of ICE (formerly U.S. Customs Service) agents and inspectors pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F). A copy of the ICE letter dated November 21, 2005, is attached as Exhibit I to Wassom Decl.

10. By letter dated December 21, 2005, DEA released portions of seven pages to the plaintiff, completing the processing of the processed pages. No fees were assessed. A copy of the DEA letter dated December 21, 2005, is attached as Exhibit J to Wassom Decl.

11. By letter dated September 26, 2005, addressed to the DEA Northeast Regional Laboratory, the plaintiff appealed DEA's initial release, stating that the signature breakdown analysis report of the alleged substance was not provided to him, and that forty pages were withheld.[1] The plaintiff requested a *Vaughn* index containing an itemized justification for withheld information. A copy of the plaintiff's letter dated September 26, 2005 is attached as Exhibit K to Wassom Decl.

12. By letter dated October 13, 2005, OIP acknowledged the plaintiff's appeal, and informed him that it would be handled in approximate order of receipt. A copy of the OIP letter dated October 13, 2005, is attached as Exhibit L to Wassom Decl.

13. By letter dated March 8, 2006, OIP enclosed portions of one additional page to him, and stated that otherwise it was affirming DEA's action. OIP stated that DEA properly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). OIP denied

---

[1] The appeal was forwarded to OIP and received on October 6, 2005.

the plaintiff's requesting for a *Vaughn* index, stating that he was not entitled to such a listing at the administrative stage of processing FOIA requests and appeals.  A copy of the OIP letter dated March 8, 2006, is attached as Exhibit M to Wassom Decl.

14.  By letter dated August 31, 2006, pursuant to a litigation review, DEA released portions of 22 pages to the plaintiff.  Thirteen of the pages were previously withheld in their entirety.  Portions of the remaining nine pages previously released, contained additional releasable information. A copy of the DEA letter dated August 31, 2006, is attached as Exhibit N to Wassom Decl.

### ADEQUACY OF SEARCH

15.  Criminal investigative records about the plaintiff were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.  Wassom Decl. ¶20.

16.  The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation.  Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.  Wassom Decl. ¶ 21.

17.  On June 22,  2005, a NADDIS query was conducted by SARO, in response to the plaintiff's requests dated April 7, 2005 and May 28, 2005.  The search was conducted by a

SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. The laboratory records responsive to the plaintiff's request were obtained from the DEA Northeastern Laboratory.  Wassom Decl. ¶ 22.

18.  In response to plaintiff's request, a total of 91 pages of material responsive to the plaintiff's requests to DEA were identified.  Of the 91 pages, portions of 61 pages and one page in its entirety were released to the plaintiff, and 29 pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions  (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(F), and the Privacy Act, 5 U.S.C. § 552a(j)(2).  Wassom Decl. ¶ 23.

19.  With regard to laboratory documents, the only information withheld was the names and/or initials of the DEA forensic chemist and other DEA laboratory personnel.  The information was withheld pursuant to exemption (b)(7)(C).  No other laboratory information was withheld.  All of the plaintiff's laboratory information was released to him; no other laboratory information is in existence.  A *Vaughn* index detailing DEA's withholdings pursuant to the asserted FOIA exemptions has been prepared, and it is attached as Exhibit O.

## DESCRIPTION OF RESPONSIVE MATERIAL

20.  The investigative information responsive to plaintiff's request is criminal investigatory data compiled for law enforcement purposes.  The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.  Wassom Decl. ¶ 25.

21.  DEA investigative case files are established by the office commencing an investigation.  The files are titled according to the name of the principal suspect violator or entity

known to DEA at the time the file is opened.  DEA does not maintain separate dossier

investigative case files on every individual or entity that is of investigative interest.  Wassom

Decl. ¶ 26.

22.  Information gathered during the course of a DEA investigation is systematically

gathered and included in the investigative case file.  This information relates to the case subject

and may also include other individuals such as those who are suspected of engaging in criminal

activity in association with the subject of the file.  Wassom Decl. ¶ 27.

23.  Investigative case files maintained in IRFS contain several records that include, in

pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page,

Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant

Disposition Report, and other documents that may serve as a substitute for the forms.  Wassom

Decl. ¶ 28.

24.  The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA

ROI.  The forms are used by DEA to memorialize investigative and intelligence activities and

information.  The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks.

Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom.  The middle of

the page is the narrative section in which investigative and intelligence information is recorded.

Wassom Decl. ¶ 29.

25.  The DEA Form 6a is the continuation page of the ROI and consists of six (6)

numbered blocks appearing at the top followed by the narrative section, in which investigative

and intelligence information is recorded, that extends to the bottom of the page.  Wassom Decl. ¶

30.

26. The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier. The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation. Wassom Decl. ¶ 31.

27. The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections. The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals. The "Evidence" section is used to document and note the collection of evidence and the disposal of items. Wassom Decl. ¶ 32.

28. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations. Wassom Decl. ¶ 33.

29. The DEA Personal History Report, DEA Form 202, The DEA Personal History Report, DEA Form 202, 11-87 version, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 71 blocks that are completed depending on the circumstances. Wassom

Decl. ¶ 34.

30. Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contains a G-DEP identifier; blocks 59, 60, 62, 63, 65, and 68 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Block 6 through 57 contain identifying information about the individual to whom the form pertains. Block 58 contains information related to and explaining the action being taken. Wassom Decl. ¶ 35.

31. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The DEA Form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers. Wassom Decl. ¶ 36.

32. The DEA Form 7, Report of Drug Property Collected, Purchased or Seized, includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison report. The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 16, the "Remarks," contains descriptive information that may include names of law enforcement officers and third parties, and other information regarding the seizure; Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or

10

signatures of DEA Special Agents, other law enforcement personnel or DEA employees.
Wassom Decl. ¶ 37.

33.  The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired.  DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property.  The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer.  Wassom Decl. ¶ 38.

34.  The DEA Disposition of Drug Evidence, DEA Form 48, records the disposition of non-drug evidence.  Similar to the DEA 48a and unlike other DEA forms, the blocks are not numbered, but are self explanatory.  Wassom Decl. ¶ 39.

35.  The Forensic Chemist Worksheet, DEA Form 86, is used to record the description of the evidence item and its packaging, including numerical identification, and recording the information as the items are initially removed from the evidence container.  Additionally, this document is used to record actions taken during the analysis of the evidence item.  These worksheets are used to record all raw data, observations and calculations and should be written to permit adequate reconstruction of the analysis of examination performed.  Wassom Decl. ¶ 40.

36.  The DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone), DEA Form 284, is a multi-block form used to request, record use and approve non-telephone consensual eavesdropping and surveillance.  The form contains three sections that include an introductory and approval section, and Part I and Part II.  The introductory section contains a File Number block, a G-DEP Identifier block, a File Title block and an Authorization block.  Part I contains 9 numbered blocks and Part II consists of

10 numbered blocks.  Wassom Decl. ¶ 41.

37.  Laboratory information regarding the plaintiff is reasonably likely to be found in DEA's Functional File System File No. 901, Laboratory Case Files.  Laboratory case files include documents related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents.  The laboratory information consists of one DEA Form 86, Forensic Chemist Worksheet, and 12  pages of pertinent and analytical material, such as charts and graphs depicting infrared/spectrographic analyses. Wassom Decl. ¶ 42.

38.  In this case, the 91 pages of responsive information consist of: DEA Reports of Investigation (38 pages); DEA Personal History Reports (four pages); DEA Defendant Disposition Report (one page); DEA Report of Drug Property Collected, Purchased, or Seized (two pages); DEA Acquisition of Non-Drug Property and Regulatory Seizures (16 pages); DEA Disposition of Drug Evidence (one page); DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone) (one page); DEA Forensic Chemist Worksheet (one page); and pertinent and analytical material, such as charts and graphs depicting infrared/ spectrographic analyses (12 pages).  Wassom Decl. ¶ 43.

39.  The DEA invoked the FOIA exemptions (b)(2),(b)(7)(C), (b)(7)(D), and (b)(7)(F) of 5 U.S.C. § 552 for the redacted materials.  Wassom Decl. ¶ 44.

40.  Material was also withheld pursuant to the Privacy Act, 5 U.S.C. §552a(j)(2). Wassom Decl. ¶ 45.

41.  Generally, no information relating to a third party is released, unless required by the FOIA or pursuant to a routine use.  In accordance with the Privacy Act, 5 U.S.C. §552a(b),

except pursuant to a written request by, or with prior written consent of, the individual to whom

the record pertains.  No routine use existed for and the plaintiff did not provide a release

authorization or proof of death for the release of any third party information.  Therefore, all third

party information was withheld where release was not required by the FOIA.  Wassom Decl. ¶

46.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/

_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

13

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LUIS HUMBERTO BARBOSA** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Civil Action No. 06-0867 (CKK)** |
| ) | **(ECF)** |
| **U.S. DEPARTMENT OF JUSTICE** ) | |
| **DRUG ENFORCEMENT ADMINISTRATION** ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

Plaintiff is incarcerated at the United States Penitentiary, Federal Correctional Institution, in Fort Dix, New Jersey.  See Complaint (Comp.) ¶ 3.  He was found guilty of possession of a controlled substance, with intent to distribute.  See United States v. Barbosa, 51 F. Supp. 597 (E.D. PA 1999).  In July 1998 Plaintiff ingested 99 pellets of what he believed was heroin in Aruba and thereafter entered the United States.  Id. at 598-99.  He was then arrested in Philadelphia when he delivered the contraband to confidential Drug Enforcement Administration (DEA) informants.  Id.  After testing at the DEA laboratory, it was discovered that the substance seized from Plaintiff was not heroin but rather cocaine base.  Id.  Accordingly, at sentencing the court considered issues of the identity of the substance, because heroin and cocaine base carry different mandatory sentences.  Id. at 599.

At the heart of Plaintiff's instant Complaint is his claim that relevant DEA laboratory results have been withheld from him in violation of the Freedom of Information Act (FOIA).  See Comp.¶¶ 1-2.  In fact, by letter dated September 8, 2005, the DEA released portions of 37

1

pages, including 14 pages of laboratory reports.  The Defendant withheld information pursuant

to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and section (j)(2) of the Privacy

Act.  The 14 pages of laboratory information "contain <u>all</u> of the information responsive to the

plaintiff's request for laboratory information."  Statement of Material Facts (SMF) ¶ 14

(emphasis added).  The only information withheld on the 14 pages were the names and/or initials

of a DEA chemist and other DEA laboratory personnel, pursuant to FOIA exemption (b)(7)(C).

SMF ¶ 19.  No other laboratory information was withheld.  <u>Id</u>.  All of the plaintiff's laboratory

information was released to him; no other laboratory information is in existence.  <u>Id</u>. A *Vaughn*

index detailing DEA's withholdings is also attached.  <u>See</u> Wassom Decl., Exh. O.  Therefore, the

DEA is not in possession of any other responsive documents and the information withheld is

exempt from disclosure pursuant to the FOIA and/or the Privacy Act.  Accordingly, the DEA is

entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Defendant hereby incorporates the Statement of Material Facts Not In Genuine Dispute,

filed contemporaneously with this Memorandum.

## ARGUMENT

### I.    Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  <u>Id.</u> at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence

of evidence to support the non-moving party's case."  <u>Sweats Fashions, Inc. v. Pannill Knitting</u>

Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In Anderson the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing

3

<u>Miscavige v. IRS</u>, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  <u>Students Against Genocide v. Dept. of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001); <u>Weisberg v. U.S. Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  <u>Hayden v. NSA</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980); <u>Trans Union LLC v. FTC</u>, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)).  <u>See also</u> <u>McGehee v. CIA</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983), <u>modified on other grounds</u>, 711 F.3d 1076 (D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1225, 1227 (9th Cir. 1991); <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), <u>aff'd in part, rev'd in part</u>, 276 F.3d 634 (D.C. Cir. 2002).

4

II.    **Standards for Locating Responsive Records**

A.    **Adequate Search**

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information.  Id. at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Consistent with the reasonableness standard, the adequacy of  the search is "dependent upon the circumstances of the case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."  Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Thus, the reasonableness standard does not require the agency to prove that it located all responsive documents.  See Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) ("'the search need only be reasonable; it does not have to be exhaustive.'") (citing Nat'l Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was

diligent and reasonable.  <u>Nation Magazine</u>, 71 F.3d at 892 n.7.  Additionally, the mere fact that a

document once existed does not mean that it now exists; nor does the fact that an agency created

a document necessarily imply that the agency has retained it.  <u>Maynard v. CIA</u>, 986 F.2d 547,

564 (1st Cir. 1993).

      The burden rests with the agency to establish that it has "made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested."  <u>Oglesby</u>, 920 F.2d at 68; <u>see</u> <u>SafeCard Servs. v. SEC</u>, 926

F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search

through affidavits of responsible agency officials so long as the affidavits are relatively detailed,

non-conclusory and submitted in good faith."  <u>Miller</u>, 779 F.2d at 1383; <u>Goland v. CIA</u>, 607 F.2d

339, 352 (D.C. Cir. 1978), <u>cert. denied</u>, 445 U.S. 927 (1980).  Although the agency has the

burden of proof on the adequacy of its search, the "affidavits submitted by an agency are

'accorded a presumption of good faith,'" <u>Carney v. Dept. of Justice</u>, 19 F.3d 807, 812 (2d Cir.

1994), <u>cert</u>. <u>denied</u>, 513 U.S. 823 (1994) (quoting <u>SafeCard Servs.</u>, 926 F.2d at 1200).  Thus,

once the agency has met its burden regarding adequacy of its search, the burden shifts to the

requester to rebut the evidence by a showing of bad faith on the part of the agency.  <u>Miller</u>, 779

F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.

<u>See</u> <u>Carney</u>, 19 F.3d at 813; <u>SafeCard</u>, 926 F.2d at 1200; <u>Maynard v. CIA</u>, 986 F.2d 547, 559-

560 (1st Cir. 1993).

**B.**     **Segregability**

      The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u>

6

sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

    In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." Mead Data,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. Id. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

### C.    Standards for A Proper Vaughn Index

    In moving for summary judgment in a FOIA case, agencies must establish a proper basis

for their withholding of responsive documents. "In response to this special aspect of summary

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health

and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits

(singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v.

Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974).  There is

no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the

Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C.

1997).  "The materials provided by the agency may take any form so long as they give the

reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail &

Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d

Cir. 1988).[2]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See  Citizens Commission on Human Rights v.

FDA, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim

and the descriptions of withheld material need not be so detailed as to reveal that which the

agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as

to whether the material is actually exempt under FOIA."  Founding Church of Scientology v.

Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

---

[2] "All that is required, and that is the least that is required, is that the requester and the
trial judge be able to derive from the index a clear explanation of why each document or portion
of a document withheld is putatively exempt from disclosure." Id.  "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on
the nature of the document at issue and the particular exemption asserted." Information
Acquisition Corp. v. Dept. of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

III.    <u>**Defendant Is Entitled to Judgment as a Matter of Law**</u>.

   A.    **The DEA Correctly Applied Exemption (b)(2).**

   FOIA Exemption (b)(2) exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Not long after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest "where disclosure may risk circumvention of agency regulation." <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976). <u>See also</u>, <u>Odle v. Dept. of Justice</u>, No. 05-2771, 2006 WL 1344813 (N.D. Cal. May 17, 2006). Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2"). <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992); <u>see</u> <u>Crooker v. ATF</u>, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material).

   "Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit. <u>Martin v. Lauer</u>, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low b(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. <u>See</u> <u>Schwaner v. Dept. of the Air Force</u>, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous

9

communications, and similar administrative markings are exempt from disclosure.  The reason is

that administrative agencies should not be burdened by responding to requests for trivial

information unlikely to be the subject of public interest.  Martin v. Lauer, 686 F.2d at 34.

Exemption "high (b)(2)" exempts from mandatory disclosure documents relating to more

substantive internal matters.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).

Withholding is permitted in this category to the extent that disclosure would reveal techniques

and procedures for law enforcement investigations or prosecutions, id., would disclose

guidelines for law enforcement investigations, or would risk circumvention of an agency statute

or impede the effectiveness of an agency's law enforcement activities.  See Crooker, 670 F.2d

1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2.  Courts

have interpreted this exemption to apply to a wide range of information, including general

guidelines for conducting investigations (see PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251

(D.C. Cir. 1993)); guidelines for conducting post-investigation litigation (Schiller v. NLRB, 964

F.2d at 1207)); a training manual with information pertaining to surveillance techniques

(Crooker, 670 F.2d at 1073); criteria for prison gang-member classification (Jimenez v. FBI, 938

F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes (Albuquerque Publishing Co. v.

Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

In this case many of the  pages in question contain "violator identifiers" consisting of G-

DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential

informant numbers.  Wassom Decl. ¶ 48.  The G-DEP, NADDIS, and confidential informant

numbers are part of DEA's internal system of identifying information and individuals.  Id.  G-

DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the

classification of the violator, the types and amount of suspected drugs involved, the priority of

the investigation and the suspected location and scope of criminal activity.  Wassom Decl. ¶

48(a).

NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug

violators known to DEA and entities that are of investigative interest.  Each number is unique

and is assigned to only one violator within the DEA NADDIS indices.  (The NADDIS indices

are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98

(2006).  Thus, Exemption (b)(7)(C) and (b)(7)(F) were used in conjunction with (b)(2) to

withhold third- party NADDIS numbers.  Wassom Decl. ¶ 48(b).

Informant identifier codes are assigned by DEA and other law enforcement agencies to

cooperating individuals and are used instead of their names in all DEA reports, memoranda and

other internal correspondence.  Informant identifier codes provide sensitive information about

individuals who cooperate with DEA and other law enforcement agencies in carrying out their

law enforcement functions.  Knowledge of informant identifier codes can assist in identifying the

informant and provide sensitive information about individuals who cooperate with DEA in

carrying out its law enforcement functions.  Exemptions (b)(7)(C), (b)(7)(D) and (b)(7)(F) were

used in conjunction with (b)(2) to withhold these identities.  Wassom Decl. ¶ 48(c).

Additionally, the release of the G-DEP codes would help identify priority given to

narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could

decode this information and change their pattern of drug trafficking in an effort to respond to

what they determined DEA knows about them or avoid detection and apprehension and create

11

alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug

Enforcement Administration's investigative and law enforcement efforts. All G-DEP codes

found in the responsive pages were withheld. Wassom Decl. ¶ 49. Finally, NADDIS numbers

and informant identifier codes are unique and personal to the individual to whom the number

applies. They are assigned by DEA for internal use and there is no public interest in the release

of these codes. Wassom Decl. ¶ 50.

### B.      Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy

the threshold issues of, first, whether the agency has the requisite law enforcement purpose in

compiling the records at issue and, second, whether the information gathered has a sufficient

nexus to the law enforcement purpose. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C.

Cir. 2002); Jefferson v. U.S. Dept. of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Campbell

v. U.S. Dept. of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419

(D.C. Cir. 1982). Therefore exemption (b)(2) was properly invoked.

In Jefferson, the court drew a distinction between agencies gathering information as part

of any government agency's "oversight of the performance of duties by its employees," and

information sought as part of investigations into illegal conduct for which the agency might

impose criminal or civil sanctions. 284 F.3d at 177. Thus, the rule from Jefferson provides a

broadly applicable distinction based more on the agency's mission and reasons for collecting the

information at issue.

Many types of agency activities have been upheld as having law enforcement purpose,

even several that arguably go beyond the core law enforcement mission of investigating crimes

that have been committed.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir.

1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. U.S.

Dept. of Justice, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement

purpose); Center to Prevent Handgun Violence v. Dept. of Treasury, 981 F. Supp. 20 (D.D.C.

1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. U.S. Dept. of

Justice, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

        In addition, the case law in this circuit is unambiguous that the agency need not tie its

collection of information to any specific or ongoing investigation.  See Tax Analysts, 294 F.3d at

78; Keys 830 F.2d at 342.  This is fully consistent with the courts' broad acceptance that the

1986 amendments to FOIA relaxed the required threshold showing for Exemption 7.  See, e.g.,

U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 780 (1989)

(recognizing that the shift from "would constitute" standard to "could reasonably be expected to

constitute" standard represents a congressional effort to ease considerably the burden in invoking

Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or

information' for 'investigatory records' as the threshold qualification for the exemption: This

amendment would broaden the scope of the exemption to include 'records or information

compiled for law enforcement purposes,' regardless of whether they may be investigatory or

noninvestigatory.").

        In the instant matter, DEA's investigative jurisdiction derives from the Comprehensive

Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act)

which authorizes DEA to enforce the Act through, for example, the investigation of incidences

involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and

the violators who operate at interstate and international levels; seize and forfeit assets derived

from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart

agencies abroad and to exchange information in support of drug traffic prevention and control.

The records deemed responsive to the plaintiff's FOIA request are criminal investigative records.

Wassom Decl. ¶ 52.  The records were compiled during criminal law enforcement investigations

of the plaintiff and several third parties.  Id.

### C.    The DEA Correctly Applied Exemption 7(C).

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement
> purposes, but only to the extent that the production of such law
> enforcement records or information . . . (C) could reasonably be
> expected to constitute an unwarranted invasion of personal
> privacy. . . .

The names of law enforcement officers who work on criminal investigations are

traditionally protected against release by Exemption 7(C).  Davis v. U.S. Dept. of Justice, 968

F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C.

Cir. 1980).  See also Butler v. DEA, No. 05-1798, 2006 WL 398653 (D.D.C. Feb. 16, 2006).

Similarly, individuals who provide information to law enforcement authorities, like the law

enforcement personnel themselves, have protectable privacy interests in their anonymity.

Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683

F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to ascertain the

individuals' identities through other means, or that their identities have been disclosed elsewhere,

does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990);

Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).  As such, Exemption 7's

threshold requirement of "records or information compiled for law enforcement purposes" is clearly met.

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Dept. of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." Reporter's Comm., 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Depart. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., U.S. Dept. of Justice v. Reporters Comm., 489 U.S. 749, 776-80 (1989). When a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public

15

interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990), aff'd, No. 90-5065, 1990 WL 134431 (D.C. Cir. Sep 14, 1990).

Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Here, in withholding certain information, DEA claimed FOIA Exemption 7(C). Wassom

16

Decl. ¶¶ 57 and 58.  As noted above, the names of a DEA chemist and other laboratory personnel, (SMF ¶ 4), and DEA agents/informants (Wassom Decl. ¶¶ 57 and 58) were withheld.  The DEA also withheld, at the request of Immigration and Customs Enforcement (ICE), a law enforcement agency names of ICE officials.  See SMF ¶ 9.  The information was clearly necessitated by and compiled for law enforcement purposes (i.e., related to the possession and distribution of a controlled substance).  This information is co-extensively exempt under FOIA Exemption (b)(6).  Id.

Specifically, in asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue.  Wassom Decl. ¶ 55.  The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.  Id.  In this case, the DEA determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.  Id.

Moreover, the identities of  DEA Special Agents, DEA laboratory personnel, and other Federal, state/local law enforcement officers were withheld.  Wassom Decl. ¶ 56.  Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.  Id.

The Special Agents and other law enforcement officers and personnel were assigned to

17

handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. Wassom Decl. ¶ 57. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. Id. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Id. There is no public interest to be served by releasing the identities of these individuals. Id. There is no public interest served by releasing the identities of these government employees.

**D.  The DEA Correctly Applied FOIA Exemption (7)(D).**

Title 5, United States Code, § 552 (hereinafter Exemption 7(D)), exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a
> confidential source including a State, local or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation, or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by a confidential source.

Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state, or local law enforcement investigations is, by its very nature, confidential. Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be determined from an analysis of the information furnished by the source himself. Indeed, this

becomes more inevitable when the analysis is made by a person familiar with the facts and

circumstances on which the investigation was predicated.  Thus, to disclose the identity of a

cooperating individual under such circumstances could be more than an unwarranted invasion of

his privacy; it would breach the confidentiality under which he cooperated.

The Landano Court acknowledged that "[t]here may . . . be . . . generic circumstances in

which an implied assurance of confidentiality fairly can be inferred."  Landano, 508 U.S. at 181.

The Court should take into consideration the informant's relation to the crime and the character

of the crime for which information has been provided in determining implied grants of

confidentiality.  Since Landano, courts have identified various crimes which warrant an implied

assurance of confidentiality.  In Mays v. Drug Enforcement Administration, 234 F.3d 1324 (D.C.

Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is

inherently so dangerous that individuals supplying information about such crimes generally

should be entitled to an implied grant of confidentiality.

In plaintiff's criminal case, sources of information included those to whom express

confidentiality was granted and those about whom, based upon the facts and circumstances,

confidentiality could be implied.  Wassom Decl. ¶ 60.  Each document or group of related pages

that contained material provided by individual(s), other than a DEA agent, was examined in light

of exemption (b)(7)(D) to determine whether confidentiality was express or implied.  Id.

As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D)

exemption to protect source-identifying and source-supplied investigative information.  The

information at issue here pertains to coded confidential informants with express assurances of

confidentiality.  Wassom Decl. ¶ 61.  Because of the nature of DEA's criminal investigations,

any information that could identify these informants, including the informant identifier codes, could subject them to serious harm, substantial repercussions, and possibly even death. Id. Accordingly, exemption (7)(D) was correctly applied.

### E.    DEA Correctly Applied Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F).  Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Albuquerque Publ'g Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal v. Bennsinger, 543 F. Supp. 38, 48 (M.D. Pa. 1981); Nunez v. DEA, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required for the use of Exemption 7(F).  In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

Traditionally, the names of DEA Special Agents, Supervisory Special Agents, ICE agents, other Federal law enforcement personnel, state/local law enforcement officers, and confidential sources of information, are withheld in accordance with 5 U.S.C. § 552 (b)(7)(F). Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

DEA Special Agents and Supervisory Special Agents, as well as members of other law

enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Wassom Decl. ¶ 64. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. Wassom Decl. ¶ 65. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. Id. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations. Id.

In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data into the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. Wassom Decl. ¶ 66. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Id. Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents other law enforcement personnel, and confidential sources of information. Id. This information was also properly withheld pursuant to Exemption (b)(7)(C).

F.    The DEA Correctly Applied Privacy Act Exemption (j)(2).

The records plaintiff requested are exempt from the Privacy Act's Disclosure Provisions.

21

Subsection (j)(2) of the Privacy Act allows an agency by regulation to exempt from mandatory

disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of . . . (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

Information was withheld pursuant to Privacy Act Exemption (j)(2), which permit

agencies to promulgate rules exempting from disclosure records compiled for law enforcement

or investigatory purposes.  The DEA has promulgated regulations pursuant to the provisions of 5

U.S.C. §§ 552(j)(5).  IRFS is a Privacy Act System of Records that was last reported at 66 Fed.

Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  In accordance with the

Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records

contained in IRFS from access.  *See* 28 C.F.R. §16.98(c)(3).  Specifically, Section 5 U.S.C.

§ 552a(j) states as follows:

> "The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is –

> (2)    maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole

22

authorities, and which consists of

(A)    information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;

(B)    information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or

(C)    reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

Subsection (j)(2)'s threshold requirement is that the system of records be maintained by "an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws."  Once the threshold requirement is satisfied, it must be shown that the system of records at issue consists of information compiled for one of the criminal law enforcement purposes listed in subsection (j)(2)(A)-(C).  See Holz v. Westphal, 217 F. Supp. 2d 50, 54-56 (D.D.C. 2002).

In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third party was released, unless required by the FOIA or pursuant to a routine use.  No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third party information.  Therefore, all third party information was withheld where release was not required by the FOIA.  Wassom Decl. ¶ 47.

Disclosure of the identities of the law enforcement officers could expose them to unnecessary public attention, criticism, harassment, and as here, in the case of law enforcement personnel, interfere with the performance of the law officer's duties.  The plaintiff has presented

no public interest to warrant disclosing the names of federal law enforcement officers and the DEA could discern no legitimate public interest that would be served by disclosing this information.  Therefore, the public interest weighs in favor of non-disclosure to foster the privacy and the efficient performance of official law enforcement duties regarding criminal investigations and/or proceedings.  Absent a legitimate public interest, disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.

      **G.**     **The DEA Conducted a Reasonable Search.**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F. Supp. 2d 146, 158 (D.D.C. 2004).  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."  Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).

Additionally, the search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Id.; see also Allen, 335 F. Supp. 2d at 99-100 (mere fact that plaintiff discovered one document from a third source that possibly should have been uncovered by the defendant agency "does not render the search process unreasonable.")  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.

Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987), cert. denied, 445 U.S. 927 (1980). Once the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d 1383. It is insufficient, however, for a requester to attempt to rebut the agency affidavit with purely speculative claims. See Carney v. U.S. Department of Justice, 19 F.3d 807, 813 (1st Cir. 1994); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991).

With regard to the search conducted by the DEA, the declaration of Leila Wassom, ¶¶ 20-46, demonstrate through detailed, non-conclusory averments that DEA engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." Oglesby, 920 F. 2d at 68.

**H.    The DEA Disclosed All Reasonably Segregable Portions of Records.**

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The District of Columbia Circuit has held that a district court considering a FOIA action has "an

affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement</u> <u>v. U.S. Customs Serv.</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Here, the DEA has met its segregability obligations. First, the agency has set forth in Leila Wassom's sworn declaration that the documents have been reviewed for segregability and that all contents of plaintiff's file were being released with the exception of a limited number of documents withheld in full or in part. Wassom Decl. ¶¶ 67-87. Both the volume of the documents released (in whole or in part) - approximately 61 of 91 and the limited number and extent of the redactions made in those released in part also speak to the issue of segregability. <u>Id.</u> at Exh. O. The <u>Vaughn</u> index addresses the 61 documents which were withheld in full and 23 documents which were withheld in part. <u>Id.</u> In sum, the declarations from the DEA adequately demonstrate that all reasonably segregable, non-exempt information has been disclosed.

## CONCLUSION

WHEREFORE, Defendant's Motion for Summary Judgment should be granted as a matter of law.

Dated: October 11, 2006.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR
D.C. Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS
D.C. BAR #434122
Assistant United States Attorney

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LUIS HUMBERTO BARBOSA                        )
                                             )
                    **Plaintiff - Pro Se**   )
        v.                                   )
                                             )Civil Action No. 06-0867 (CKK)
                                             )        (ECF)
U.S. DEPARTMENT OF JUSTICE                   )
DRUG ENFORCEMENT ADMINISTRATION )
                    Defendant.               )
_____)

## ORDER

1

Upon consideration of Defendant's Motion for Summary Judgment and the entire record herein, the Court is of the opinion and finds that, for the reasons set forth by Defendant, Defendant's Motion for Summary Judgment should be granted.  Accordingly, it is this _____ day of _____, 2006,

ORDERED that Defendant's Motion for Summary Judgment be and is hereby GRANTED; and it is and it is

FURTHER ORDERED that judgment be and is hereby rendered in favor of defendant; and this case is DISMISSED with prejudice.

_____
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2006, I caused the foregoing

Motion to Dismiss to be served on Plaintiff, postage prepaid, addressed as follows:


LUIS HUMBERTO BARBOSA
REG. 29500-053
FCI-Fort Dix - West
P.O. Box 7000
Fort Dix, NJ 08640


/s/
_____

MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 305-4851

3