# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LUIS H. BARBOSA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 06-0036 RCL** |
| **DEPARTMENT OF JUSTICE,** | ) |
| **DRUG ENFORCEMENT ADMINISTRATION,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| ———————————————————— | ) |

## <u>DECLARATION OF LEILA I. WASSOM</u>

1. I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C. From August 1991 to June 2005, I was assigned to the Freedom of Information and Records Management Section, DEA Headquarters.

2. I review for litigation purposes both the initially processed and appealed Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by DEA. I have performed these duties at DEA since 1991.

3. My duties require that I am familiar with the policies and practices of DEA regarding the processing and release of information requested under the FOIA/PA, and the application of the FOIA/PA and exemptions for which I have received formal and on the job training.

4.  In preparing this declaration, I have read and am familiar with the complaint, in the above

entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5.  SARO is the DEA office responsible for responding to, the search for, and the processing and

release of information requested under FOIA and PA.  I am familiar with the policies, practices

and procedures employed by SARO that relate to the search for, and the processing and release

of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

6.  By letter dated April 7, 2005, addressed to DEA's Northeast Regional Laboratory (NERL),

the plaintiff requested the chemical signature breakdown analysis report for DEA laboratory

number 124175.  A copy of the plaintiff's letter dated April 7, 2005, is attached as Exhibit A.

7.  By letter dated May 28, 2005, also addressed to NERL, the plaintiff requested any records

pertaining to laboratory exhibit number 124175, specifically requesting the chemical signature

breakdown analysis report, and any and all "materials" regarding himself.  A copy of the

plaintiff's letter dated May 28, 2005, is attached as Exhibit B.

8.  By letter dated June 22, 2005, the DEA Freedom of Information Section (SARO)

acknowledged the plaintiff's request and informed him that it would be processed in

chronological order based on the date of its letter.  The letter confirmed the plaintiff's obligation

to pay all applicable fees up to $25.00.  A copy of the DEA letter dated June 22, 2005, is

attached as Exhibit C.

9.  By letter dated September 8, 2005, DEA released portions of 37 pages, including 14 pages of laboratory reports.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and section (j)(2) of the Privacy Act.  The 14 pages of laboratory information contain all of the information responsive to the plaintiff's request for laboratory information.  The only information withheld on the 14 pages are the names and/or initials of a DEA chemist and other DEA laboratory personnel,  pursuant to FOIA exemption (b)(7)(C).  A copy of the DEA letter dated September 8, 2005, is attached as Exhibit D.

10.  By attached undated letter, DEA informed the plaintiff that his name was mentioned in two other "related" files, and that if he wished the files to be processed, he must agree to pay an estimated search fee of $56.00.  The letter included a line for the plaintiff to sign to indicate that he agreed to pay the search fee.  The plaintiff subsequently returned the signed letter to DEA, and the files were processed.  A copy of the undated DEA letter with the plaintiff's signature on the appropriate signature line is attached as Exhibit E.

11.  By letter dated October 22, 2005, again addressed to the Northeast Regional Laboratory, the plaintiff again requested the chemical signature breakdown analysis report.  A copy of the plaintiff's letter dated October 22, 2005, is attached as Exhibit F.

12. By letter dated October 28, 2005, DEA released portions of four pages to the plaintiff from his related files.  Three pages were withheld in their entirety.  Seven pages were forwarded to another agency.  A copy of the DEA letter dated October 28, 2005, is attached as Exhibit G.

13.  By letter dated October 28, 2005,  DEA forwarded eight pages to the U.S. Immigration and Customs Enforcement (ICE) for consultation and return to DEA.  A copy of the DEA letter to ICE dated October 28, 2005, is attached as Exhibit H.

14.  By letter dated November 21, 2005, ICE returned the documents,  withholding the names of ICE (formerly U.S. Customs Service) agents and inspectors pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F).  A copy of the ICE letter dated November 21, 2005, is attached as Exhibit I.

15.  By letter dated December 21, 2005, DEA released portions of seven pages to the plaintiff, completing the processing the processed pages.  No fees were assessed.  A copy of the DEA letter dated December 21, 2005, is attached as Exhibit J.

16.  By letter dated September 26, 2005, addressed to the DEA Northeast Regional Laboratory, the plaintiff appealed DEA's initial release, stating that the signature breakdown analysis report of the alleged substance was not provided to him, and that fourty (sic) pages were withheld.[1] The plaintiff requested a *Vaughn* index containing an itemized justification for withheld information.  A copy of the plaintiff's letter dated September 26, 2005 is attached as Exhibit K.

17.  By letter dated October 13, 2005, OIP acknowledged the plaintiff's appeal, and informed him that it would be handled in approximate order of receipt.  A copy of the OIP letter dated October 13, 2005, is attached as Exhibit L.

---

[1] The appeal was forwarded to OIP and received on October 6, 2005.

18.  By letter dated March 8, 2006, OIP enclosed portions of one additional page to him, and stated that otherwise it was affirming DEA's action.  OIP stated that DEA properly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  OIP denied the plaintiff's requesting for a *Vaughn* index, stating that he was not entitled to such a listing at the administrative state of processing FOIA requests and appeals.  A copy of the OIP letter dated March 8, 2006, is attached as Exhibit M.

19.  By letter dated August 31, 2006, pursuant to a litigation review, DEA released portions of 22 pages to the plaintiff.  Thirteen of the pages were previously withheld in their entirety.  Portions of the remaining nine pages previously released, contained additional releasable information. A copy of the DEA letter dated August 31, 2006, is attached as Exhibit N.

## ADEQUACY OF SEARCH

20.  Criminal investigative records about the plaintiff were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

21.  The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation.  Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

22.  On June 22,  2005, a NADDIS query was conducted by SARO, in response to the plaintiff's

requests dated April 7, 2005 and May 28, 2005.  The search was conducted by a SARO pre-

processor, who used the plaintiff's name, Social Security Number, and date of birth. The

laboratory records responsive to the plaintiff's request were obtained from the DEA Northeastern

Laboratory

23.  In response to plaintiff's request, a total of 91 pages of material responsive to the plaintiff's

requests to DEA were identified.  Of the 91 pages, portions of 61 pages and one page in its

entirety were released to the plaintiff, and 29 pages were withheld in their entirety.  Information

was withheld pursuant to FOIA exemptions  (b)(2),  (b)(7)(C), (b)(7)(D), (b)(7)(F), and the

Privacy Act, 5 U.S.C. § 552a(j)(2).

24.  With regard to laboratory documents, the only information withheld was the names and/or

initials of the DEA forensic chemist and other DEA laboratory personnel.  The information was

withheld pursuant to exemption (b)(7)(C).  No other laboratory information was withheld.  All of

the plaintiff's laboratory information was released to him; no other laboratory information is in

existence.  A *Vaughn* index detailing DEA's withholdings pursuant to the asserted FOIA

exemptions has been prepared, and it is attached as Exhibit O.


## DESCRIPTION OF RESPONSIVE MATERIAL

25.  The investigative information responsive to plaintiff's request is criminal investigatory data

compiled for law enforcement purposes.  The information was collected pursuant to DEA's law

enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.

26. DEA investigative case files are established by the office commencing an investigation. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

27. Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

28. Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition Report, and other documents that may serve as a substitute for the forms.

29. The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities and information. The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative and intelligence information is recorded.

30.  The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.

31.  The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier.  The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel.  The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation.

32.  The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections.  The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals.  The "Evidence" section is used to document and note the collection of evidence and the disposal of items.

33.  Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS.  In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

34.  The DEA Personal History Report, DEA Form 202, The DEA Personal History Report, DEA Form 202, 11-87 version, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or

at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index.  The form consists of 71  blocks that are completed depending on the circumstances.

35.  Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contains a G-DEP identifier; blocks 59, 60, 62, 63, 65, and 68 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel.  Block 6 through 57 contain identifying information about the individual to whom the form pertains. Block 58 contains information related to and explaining the action being taken.

36.  DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants.  A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts.  The DEA Form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers.

37.  The DEA Form 7,  Report of Drug Property Collected, Purchased or Seized,  includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison report.  The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 16, the "Remarks," contains descriptive information that may include names

of law enforcement officers and third parties, and other information regarding the seizure;

Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special

Agents, other law enforcement personnel or DEA employees.

38.  The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to

report any non-drug property acquired.  DEA uses the DEA-Form 7a to log or maintain a record

of the non-drug property.  The form consists of 31 blocks of which Block 4 contains the G-DEP

identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of

a DEA Special Agent or other law enforcement officer.

39.  The DEA Disposition of Drug Evidence, DEA Form 48, records the disposition of non-drug

evidence.  Similar to the DEA 48a and unlike other DEA forms, the blocks are not numbered,

but are self explanatory.

40.  The Forensic Chemist Worksheet, DEA Form 86, is used to record the description of the

evidence item and its packaging, including numerical identification, and recording the

information as the items are initially removed from the evidence container.  Additionally, this

document is used to record actions taken during the analysis of the evidence item.  These

worksheets are used to record all rew data, observations and calculations and should be written

to permit adequate reconstruction of the analysis of examination performed.

41.  The DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC

TV Equipment (Non-Telephone), DEA Form 284, is a multi-block form used to request, record

use and approve non-telephone consensual eavesdropping and surveillance.  The form contains

three sections that include an introductory and approval section, and Part I and Part II.  The

introductory section contains a File Number block, a G-DEP Identifier block, a File Title block and an Authorization block.  Part I contains 9 numbered blocks and Part II consists of 10 numbered blocks.

42.  Laboratory information regarding the plaintiff is reasonably likely to be found in DEA's Functional File System File No. 901, Laboratory Case Files.  Laboratory case files include documents related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents.  The laboratory information consists of one DEA Form 86, Forensic Chemist Worksheet, and 12  pages of pertinent and analytical material, such as charts and graphs depicting infrared/spectrographic analyses.

43.  In this case, the 91 pages of responsive information consist of: 38 DEA Reports of Investigation; four (4) DEA Personal History Reports; one (1) DEA Defendant Disposition Report; two (2) DEA Report of Drug Property Collected, Purchased, or Seized; 16 DEA Acquisition of Non-Drug Property and Regulatory Seizures; one (1) DEA Disposition of Drug Evidence; one (1) DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone); one (1) DEA Forensic Chemist Worksheet; and 12 pages of pertinent and analytical material, such as charts and graphs depicting infrared/ spectrographic analyses.

44.  Detailed discussions of the basis and jurisdiction for invoking the Freedom of Information Act exemptions for all of the redacted material, are set forth below.  The exemptions utilized by

DEA to withhold material pursuant to the Freedom of Information Act are (b)(2),(b)(7)(C), (b)(7)(D), and (b)(7)(F) of 5 U.S.C. § 552.

45.  Material is also withheld pursuant to the Privacy Act,  5 U.S.C. §552a(j)(2).  IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access.  *See* 28 C.F.R. §16.98(c)(3)

46.  In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third party information.  Therefore, all third party information was withheld where release was not required by the FOIA.

## **INTERNAL RULES AND PRACTICES**

### **FOIA EXEMPTION (b)(2)**

47.  The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.

48.  Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers.  The G-

DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b)  NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest.  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2006).  Thus, Exemption (b)(7)(C) and (b)(7)(F) were used in conjunction with (b)(2) to withhold third- party NADDIS numbers.

(c)  Informant identifier codes are assigned to DEA and other law enforcement agencies to  cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence.  Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions.  Knowledge of informant identifier codes can assist in identifying the informant and provide sensitive information about individuals who cooperate with DEA in carrying out its law enforcement functions.  Exemptions  (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identities.

49.  The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities.  Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.  All G-DEP codes found in the responsive pages are withheld.

50.  NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies.  They are assigned by DEA for internal use and there is no public interest in the release of these codes.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### FOIA Exemption (b)(7) Threshold

51.  DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*. (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example,  the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

52.  The records deemed responsive to the plaintiff's FOIA request are criminal investigative

records.  The records were compiled during criminal law enforcement investigations of the

plaintiff and several third parties.

## INVASION OF PERSONAL PRIVACY

## FOIA Exemption (b)(7)(C)

53.  5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law

enforcement purposes the disclosure of which could reasonably be expected to constitute an

unwarranted invasion of personal privacy.  Many of the documents processed in response to

plaintiff's FOIA request contain names and other identifying information which would reveal the

identity of and disclose personal information about individuals who were involved or associated

with the plaintiff or with a law enforcement investigation.  The individuals are protected from

the disclosure of their identities and information about them.  These individuals include third

parties, suspects, co-defendants, and confidential sources of information.

54.  In making the determination to release or withhold this information, the individuals' privacy

interests were balanced against any discernible public interest in disclosure of the individuals'

identities.  In this instance, the plaintiff provided no facts to show any public interest for which

any potential public interest would outweigh the privacy interests of the individuals.  Thus,

disclosure of the identities would be an unwarranted invasion of their personal privacy.

55.  In asserting this exemption, each piece of information was examined to determine the degree

and nature of the privacy interest of any individual whose name and/or identifying data appeared

in the documents at issue.  The public interest in disclosure of the information was determined

by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

56. The identities of DEA Special Agents, DEA laboratory personnel, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

57. The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of these individuals.

58. Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff. They were, and possibly still are, in positions of

access to information regarding official law enforcement investigations.  If their identities are

released, they could become targets of harassing inquiries for unauthorized access to information

pertaining to ongoing and closed investigations.  Also, release of their identities would constitute

an unwarranted invasion of their personal privacy.  There is no public interest to be served by

releasing the identities of government employees.

## CONFIDENTIAL SOURCES AND INFORMATION OBTAINED FROM CONFIDENTIAL SOURCES

### FOIA Exemption (b)(7)(D)

59.  The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled

for law enforcement purposes the disclosure of which could reasonably be expected to reveal the

identity of a confidential source and/or information furnished by a confidential source.

Exemption (b)(7)(D) was employed to withhold certain reports in part, and others in their

entirety, that contained information that would disclose the identity of and the information

provided by the source.

60.  Sources of information include those to whom express confidentiality was granted and those

about whom, based upon the facts and circumstances, confidentiality could be implied.  Each

document or group of related pages that contain material provided by individual(s), other than a

DEA agent, was examined in light of exemption (b)(7)(D) to determine whether confidentiality

was express or implied.

61.  As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D)

exemption to protect source-identifying and source-supplied investigative information.  The

information at issue here pertains to coded confidential informants with express assurances of confidentiality.  Because of the nature of DEA's criminal investigations, any information that could identify these informants, including the informant identifier codes, could subject them to serious harm, substantial repercussions, and possibly even death.

### Express Confidentiality - Coded Informants

62.  Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA.  Such cooperative arrangements are established and maintained according to DEA policy and procedure.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  They are also assured that their names will not be used in DEA investigative materials.  They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.

## SAFETY OF LAW ENFORCEMENT PERSONNEL AND OTHER INDIVIDUALS

### FOIA Exemption (b)(7)(F)

63.  The names of  DEA Special Agents,  Supervisory Special Agents, United States Customs Service (USCS) , other Federal law enforcement personnel, a state/local law enforcement officer, and confidential sources of information,  were withheld in accordance with 5 U.S.C. § 552 (b)(7)(F).  Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

64. DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.

65. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

66. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents other law enforcement personnel, and confidential sources of information. This information was also withheld pursuant to Exemption (b)(7)(C).

## SEGREGABILITY

67. All of the responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

68. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

69. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient

means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

70.  In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business.  Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

71.  Pages "6" and "7" comprise a  Personal History Reports, DEA Form 202, of a third party. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2),  (b)(7)(C), and, (b)(7)(F).  The reports contain identifying and investigative information about the third party. The plaintiff's name is mentioned only as an associate of the third party.

72.  Pages "9" through "19" , "21", and "22" comprise 13 Acquisition of Non-Drug Property, DEA Form 7a.  The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The pages contain information about the drug trafficking interaction of the plaintiff and a coded informant.  The information about the plaintiff is inextricably intertwined with information about the coded informant.

73.  Page "20"is a DEA Form 7a.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).  The page contains information about an investigation of drug trafficking.  The plaintiff's name is not mentioned on the page.

74. Page "28" is a one page ROI describing the acquisition of a non-drug exhibit. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The pages contain information about the drug trafficking interaction of the plaintiff and a coded informant  The information about the plaintiff is inextricably intertwined with information about the coded informant.

75. Pages "36" and "37" comprise a two page ROI containing the debriefing of a coded informant, who provided information about his/her drug trafficking interaction with the plaintiff. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).   The information about the plaintiff is inextricably intertwined with information about coded informants and a third party.

76. Page "40" is a one page ROI describing a correction to a prior ROI.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The page contains information about the drug trafficking interaction of the plaintiff and a coded informant. The information about the plaintiff is inextricably intertwined with information about the coded informant.

77. Page "41" is a one page ROI describing the acquisition of a non-drug exhibit.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The page contains information about the drug trafficking interaction of the plaintiff and a coded informant.  The information about the plaintiff is inextricably intertwined with information about the coded informant.

78. Page "42" is a one page ROI describing the acquisition of a non-drug exhibit. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The page contains information about the activities of a coded informant. The plaintiff's name is mentioned only in the Indexing Section.

79. Page "43" is a one page ROI describing the acquisition of a non-drug exhibit . The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). The page contains information about an investigation of drug trafficking. The plaintiff's name is mentioned only in the Indexing Section.

80. Pages "44" through "51" are one page ROIs describing the acquisition of non-drug exhibits. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The pages contain information about the drug trafficking interaction of the plaintiff and a coded informant. The information about the plaintiff is inextricably intertwined with information about the coded informant.

81. Pages "57" and "58" comprise a two page ROI describing the investigation of the plaintiff. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The pages contain information about the drug trafficking interaction of the plaintiff, a coded informant, and a third party. The information about the plaintiff is inextricably intertwined with information about the coded informant and the third party. Pages "59" and "60" comprise a two page ROI containing a debriefing of three coded informants, who provided information about the drug trafficking activities of themselves, the plaintiff, and third parties. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C),

(b)(7)(D), and (b)(7)(F).  The information about the plaintiff is inextricably intertwined with information about the coded informants and the third parties.

82.  Pages "61" and "62" comprise a two page ROI containing a debriefing of two coded informants, who provided information about the drug trafficking activities of themselves, the plaintiff,  and third parties.  The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The information about the plaintiff is inextricably intertwined with information about the coded informants and the third parties.

83.  Page "63" is a DEA Form 284,  Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone).  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The page contains information about the drug trafficking interaction of the plaintiff and coded informants.  The information about the plaintiff is inextricably intertwined with information about the coded informants

84.  Page "78" is a one page ROI containing the case closing of one of the plaintiff's investigations.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The page contains information from a coded informant about the drug trafficking interaction of the plaintiff.  The information about the plaintiff is inextricably intertwined with information about the coded informant.

85.  Page "79" is a one page ROI containing a case status of one of the plaintiff's investigations.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The page contains information from a coded informant about the drug trafficking

interaction of the plaintiff.  The information about the plaintiff is inextricably intertwined with information about the coded informant.

86.  Page "80" is a one page ROI containing a debriefing of a coded informant, who provided information about the drug trafficking activities of the plaintiff.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The information about the plaintiff is inextricably intertwined with information about the coded informant.

87.  The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my information and belief.

_____          _____*s/ Leila I. Wassom*_____
    DATE                                        Leila I. Wassom
                                             Paralegal Specialist
                                             Office of Chief Counsel
                                             Drug Enforcement Administration
                                             Washington, D.C.  20537