IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LUIS HUMBERTO BARBOSA, )
)
Plaintiff - Pro Se, )
)
)
Vs. ) Civil Action No. 06-0867 (CKK)
) (ECF)
)
U.S. DEPARTMENT OF JUSTICE, )
DRUG ENFORCEMENT ADMINISTRATION, )
)
Defendant. )
_____)

RECEIVED

JAN - 8 2007

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

MOTION AND ATTACHED AFFIDAVIT IN RESPONSE
TO DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES, Luis Humberto Barbosa, appearing pro se in the above entitled Civil case and files his response to the U.S. Department of Justice's Reply Brief in support of its motion for Summary Judgment.

Plaintiff now opposes U.S. Justice Department's Reply Brief on a variety of grouds stated within.

D I S C U S S I O N

1.    Plaintiff's original Civil Action Complaint, as well as his response and affidavit in opposition to defendant's motion for summary judgment, both contain and/or raise genuine issues of material facts that have been properly presented to the Court in the form of affidavits all supported with clear, undisputable, inequivocal compelling evidence.

2.    Defendant's motion for summary judgment and its reply in further support of its motion for summary judgment dated 12/19/2006, both contain nothing but unsupported conclusory statements.

3.    Defendant has failed, both in its motion for summary judgment supported by Leila Wassom's Decl. and in its reply brief supported by William C. Little's Decl., to present and/or produce any evidence at all showing and/or proving contrary to plaintiff's allegations.

4.    Plaintiff alleges that both Leila Wassom's Decl. and Willian C. Little's Decl. are without merit because they only present conclusory facts unsupported by evidence.

5.    Declaration of fact by a moving party that is not supported by evidence of material facts, does not outweigh issues of genuine claims that  have been supported by clear, undisputable, inequivocal compelling evidence in the form of affidavit.

6.    Furthermore, although defendant failed to come forward with evidence proving contrary to plaintiff' allegations. Plaintiff has obtained more evidence that further support his previous claims about the drug laboratory analysis report No. 124175 not being pertinent to plaintiff nor to his case for which he was convicted in a court of law.

7.    The new evidence shows that the main DEA Agent in charged and responsible to the criminal investigation of plaintiff Barbosa's case, lied, deceived, and misleaded the Court about the facts of Barbosa's criminal case under a sworn declaration in an unrelated criminal case U.S. v. Rafael Abreu, Crim. No. 97-423-02. See, ex. 18-19.

8.    In this case Mr. Abreu presented affidavit to the court alleging that he and three (3) other defendants holding unrelated

cases had discovered and identified DEA informant Juan Medina, who had participated in Abreu's criminal case and in the two other defendants' cases as active informant, was the same informant who participated in plaintiff's case posing as a drug trafficker and who supplied Barbosa with the alleged "heroin" in Aruba for transportation and delivering the same to the informants in Philadelphia, PA. After a laboratory analysis the alleged heroin turned out to be cocaine base.

9.    Plaintiff alleges that the declaration is false for two reasons: (1) When read as a whole it shows and indicates that Barbosa was indicted and finally convicted for heroin; (2) Failed to disclose Juan Medina's real name.

10.    Agent Devlin knows Medina's real name and that Medina is operating under his middle and last mane in order not to be easily identified for Medina's own protection. Medina in other instances had used other aliases like: Felix Zorrilla and Emilio Medina.

11.    Notice that Devlin's declaration was prepared two years after Barbosa was sentenced for cocaine base and Devlin was there before the Court for that proceeding.

12.    In Abreu's case the Court ordered an In Camera Inspection of the photographs after the government had produced the photographs and Devlin affidavit.

13.    Interestingly, the two photographs were presented to Mr. Abreu for him only to inspect and to see that the two individuals were not the same.

14.    Shortly after the Court had conducted the In Camera Inspection to the photographs where the government had architected the process of identification in order to prove contrary to Abreu's allegations. Plaintiff contacted Mr. Abreu's wife and she advised that her husband had informed her that the physical descriptions of the individual in Aruba (Emilio Medina) did not match to the physical descriptions described by Barbosa about Emilio Medina fully matching the physical descriptions of Juan Medina.

15.    Subsequently, on November 7, 2001, plaintiff filed a motion to the Court for conducting an In Camera Inspection in compliance with the procedural due process of law requirement. The motion was denied by the Court (see, exhibit 20-25 herein attached).

16.    In sum. What the government did in Mr. Abreu's case was presenting a false (switched) photograph of the individual in Aruba only to Mr. Abreu for proving to Abreu and the Court that the individual was not the same.

17.    Plaintiff alleges was victim of an illegal reverensed sting entrapment architected by these paid DEA informants. Here is a short statement of how they operate:

(a)    They first induce and convince their targeted victims into transporting and/or delivering certain agreed upon drugs to deliver  them to these informants from point A to point B. Point B is always Philadelphia, PA, their desired jurisdiction. They even supply the victims with transportation funds. These victims are looted from any state here in the United States including Internationally to end up arrested in Philadelphia, PA.

(b)    Second, then they feign to have supplied their victims with the agreed upon drugs for transportation and/or delivering same to these informant at point B, through another paid informant from the same network group posing as drug trafficker and their associate at point A.

(c)    Then the victims get arrested at point B in possession of what the victims believed had in possession, not what they actually possessed which is neither drugs nor controlled substance.

(d)    Interestigly, after they have their victims arrested, they always expect that the victims never trial their cases. But in case that they due, then the government Agents, prosecuting counsel, and chemist will conspire utilizing all means making sure the victim is convicted. Even using unrelated drug reports for falsely proving that the victim was in possession of drugs or controlled substance, which was the case of plaintiff Barbosa.

18.    Plaintiff alleges that the reason for Forensic Chemist Mr. Charles L. Cusumano using an unrelated drug analysis report No. 124175,the reasons are explained above. All the evidence supporting these allegations is conclusive.

19.    The above conduct on part of these informants was brought to the government's attention back in June of 2000, in an unrelated criminal case. These informants were accused of supplying drugs to other defendants using the above described scheme. But the government categorically  denied any involvement (see, exhibit 26- 28 herein attached).

20.    There is another evidence that also support plaintiff's allegations about the chemist using an   unrelated drug analysis report, in this case No. 124175, falsely accusing plaintiff of possession of cocaine base in order to convict him. This evidence cannot be left out for any reason because  it supports why plaintiff was not in possession of no drugs nor controlled substance.

21.    These informants must have been previously warned not to use drugs or any controlled substance in case that they have any individual swallowing drugs for them. The reason for this is because Emilio Medina a/k/a Felix Zorrilla a/k/a Juan Medina was previously responsible for the death of one of his swallowers in Venezuela (see, exhibit  29-30 herein attached).

22.    This Felix Zorrilla a/k/a Emilio Medina a/k/a Juan Medina was the one who supplied plaintiff Barbosa with the 99 sylindrical shaped pellets allegedly containing "heroin" in Aruba to deliver the same to these informants herein  Philadelphia, PA. And the same DEA informant  allegedly identified with participation in three different unrelated criminal cases.

23.    Plaintiff alleges the government in Abreu's case had an inheritance principle to lie about the facts of Barbosa's criminal case because being truthful about the facts of Barbosa's criminal case - and conducting  a proper in camera inspection of the photographs would affected three criminal convictions. Therefore the court should not deem as admitted any factual assertions made by the defendant that are not supported by evidence showing contrary to alleged allegations.

24.    Defendant's assertion that plaintiff's opposition brief does not comply with Local Rules 7(h) and 56.1, is indeed clear prelude and defendant's only last resort for misleading the court into a technical unwarranted dismissal of the action.

25.    Defendant's assertion that the Agency has released all respective material is without merit. The Agency still withholding the following materials:

(a) Page 36 is page one of two that has 75% of its information blacken. Page 37 is page two of page 36 and was not released.

(b) Pages 40, 41, and 42 are still withheld.

26.    Forensic Chemist Charles L. Cusumano testified in plaintiff's jury trial and stated that he conducted a series of indivudual tests on the substance and none returned positive for cocaine base, only the likelihood that cocaine base was present. But that on his last test he conducted the substance returned positive for cocaine base.

Notice that according to DEA Form-7    (ex. "C") the alleged substance was "heroin", and that in order to have determined that the substance was not heroin the chemist would have had, first, to have conducted a series of tests. There has been no records released that these tests were conducted on the substance.

27.    With regard to Little's Decl. ¶ 22 explaining that the basis to withholding page 34 of the record was that the information did not relate to plaintiff. Plaintiff alleges that this assertion is without merit because it  shows that the entire information in page 34  relates to plaintiff (see, plaintiff's opposition brief, exhibit 2).

28.    With regard to Little's Decl. ¶ 19-20, plaintiff alleges
that this assertion is totally without merit for the following
reason. When a particular alleged substance is received by the DEA
Northeast Regional Laboratory for analysis. The lab. first step in
order to minimizing unnecessary random tests is to read box 11 on
DEA Form-7 to see what are the alleged drugs. These drug substances
are always accompanied by these DEA Form-7's. Once the lab. has deter-
mined what the alleged drugs are based on the information in box 11.
then they move to load the instrument with the standard sample of the
particular drug they are about to test the alleged substance received
for comparison. The lab. does not load drug testing instrument now for
then conducting the analysis eight days later.

29.    The Northeast Regional Laboratory receives hundreds of
drug substances for testing every day to have an electronic drug
testing instrument just seating loaded from July 14, 1998 to July 22,
1998. Therefore defendant's assertion does not pass the smell test
and thus is without merit.

30.    Plaintiff alleges and maintains that exhibit 5, 12, and
17 are conclusively clear for supporting plaintiff's allegations
about the drug analysis report No. 124175 not being pertinent to
plaintiff nor to his criminal case for which he was convicted in a
Court of law. Exhibit 5, 12, and 17 are all clearly showing that the
analysis on the drug report No. 124175 was prepared on July 14, 1998,
when plaintiff was arrested on July 18, 1998, and the substance
received by the laboratory on July 20, 1998.

31.    Plaintiff alleges and maintains that the laboratory analysis report No. 124175 is not pertinent to him nor to his criminal case because he was arrested on July 18, 1998, and the drugs or controlled substance were delivered to the laboratory for analysis on July 20, 1998.

32.    Plaintiff alleges that exhibit 5, 12, and 17 previously presented to the Court in support of his allegations, and the exhibits herein presented in support of further allegations, all are conclusive in support that the drug analysis report No. 124175 is not pertinent to plaintiff nor to his criminal case.

### C O N C L U S I O N

33.    Wherefore, and for all of the above reasons, and in light of the fact that the defendant failed to present and/or produce any evidence supporting its motion for summary judgment nor in its reply brief in order to support that the Court may grant defendant's summary judgment, see, Adickes v. S.H. Kress, and Co., 398 U.S. 144, 26 L.Ed. 2d. 142, 90 S. Ct. 1598, requires that the party opposing a motion for summary judgment bore the burden of responding only after the moving party had met its burden of coming forward with proof of the absence of a genuine issue of material fact (244 APP DC 160, 756 F.2d 181), also in light of the fact that plaintiff properly presented his claims supported with clear, undisputable, inequivocal compelling evidence in the form of affidavit, the plaintiff respectfully submits that this Honorable Court should in the interest of justice, fairness, integrity and public reputation of judicial proceedings rule as follows:

(a)    grant plaintiff's civil action case as a matter of law;

(b)    grant all reliefs requested in plaintiff's motion in response to defendant's motion for summary judgment dated 11/6/2006.

I, Luis Humberto Barbosa, pro se plaintiff, declare the foregoing is true and correct to the best of my knowledge and belief, and is given under the penalty of perjury pursuant to 28 USC § 1746.

Respectfully submitted,

Executed on _Jan. 3rd_, 2007.

Luis H. Barbosa #29500-053
FCI Fort Dix - Camp
P.O. Box 1000
Fort Dix, New Jersey 08640

## C E R T I F I C A T E   O F   S E R V I C E

I, Luis  H. Barbosa, hereby certify that on this 3rd day of January of 2007, I caused the foregoing plaintiff's motion and affidavit in response to defendant's reply brief for summary judgment to be served, first Class pre-paid U.S. postage, upon the party listed listed below.

MERCEDEH MOMENI

ASSISTANT UNITED STATES ATTORNEY

DISTRICT OF COLUMBIA

JUDICIARY CENTER

555 4TH STREET, N.W.

WASHINGTON, D.C. 20001

Respectfully submitted,

Luis H. Barbosa

Exhibits 10-30

EX. 18

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                                      CIVIL NO. 00-CV-3964
                 v.                        :          CRIMINAL NO. 97-423-02

RAFAEL ABREU                           :
          a/k/a "Ito"


## DECLARATION OF Phillip DEVLIN

I, Phillip Devlin, Special Agent, being duly sworn and on oath, deposes and states as follows:

1.   I have been a special agent with the Drug Enforcement Administration since 1983.  For the last year, I have been a group supervisor.

2.   In approximately 1998 I was assigned to the investigation into drug activity of Luis Humberto Barbosa, who was initially charged by complaint and warrant on July 18, 1998, with possession with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1). These charges arose from Barbosa having smuggled controlled substances into the United States by swallowing them in Aruba and then traveling to the United States.  Barbosa was arrested in Philadelphia on July 18, 1998, shortly after he had dispelled the controlled substances. He was subsequently indicted and convicted in a trial before the Honorable Stewart Dalzell.

Ex. 19

3.    I am familiar with the allegation of Rafael Abreu that an individual known as Emilio Medina, a/k/a Felix Zorilla, is the same person as Juan Medina, a confidential informant in Abreu's case.

4.    I am aware that Emilio Medina was arrested by the Aruban authorities in Aruba two days after Barbosa left Aruba which would have been on or about July 19, 1998.  To my best information and belief, Emilio Medina was charged in Aruba with drug trafficking and remains in custody in Aruba.

5.    I obtained photographs of both Juan Medina and Emilio Medina attached to this affidavit.  Juan Medina's photograph is attached as Exhibit A and Emilio Medina's photograph is attached as Exhibit B.

6.    Juan Medina's photograph was obtained from the DEA confidential informant file for Juan Medina.  The photograph of Emilio Medina was obtained from the DEA country attache in Curacao.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 13th day of June, 2001.

6-15-01

Phillip Devlin, Group Supervisor
Drug Enforcement Administration

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
*******************************

Ex. 20

Dated: November 7, 2001

Luis H. Barbosa
29500-053  Unit 5803-West
FCI Fort Dix
P.O. Box 7000
Fort Dix, NJ  08640

Honorable Jan E. BuBois, USDJ
12613 United States Courthouse
601 Market Street
Philadelphia, PA  19106

RE: Abreu v. United States
    Civil No: 00-CV-3964
    Crim. No: 97-423-02

   To the attention of the Clerk for the United States District
Court for the Eastern District of Pennsylvania.  I respectfully
request that you file this Response to the Government's Response
to Non-Party's Request for In Camera Inspection of Photographs to
the Honorable Jan E. DuBois, United States Judge, on my behalf.

   Thank you for your time and patience in this matter.

Respectfully yours,

Luis H. Barbosa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

EX. 9|

```
_____
                                )
United States of America        )
                                )
v.                              )        Civil No: 00-CV-3694
                                )        Crim. No: 97-423-02
Rafael Abreu                    )
        a/k/a "Ito"             )
_____)
```

### RESPONSE TO THE GOVERNMENT'S RESPONSE TO NON-PARTY'S REQUEST FOR IN CAMERA INSPECTION OF PHOTOGRAPHS

Now comes Luis H. Barbosa (Movant/Mr. Barbosa) pro-se respectfully submits the above entitled Response to the Government's Response to Non-Party's Request for In Camera Inspection of Photographs.

### DISCUSSION

On or about October 10, 2001, the above movant moved this Honorable Court for a second evidentiary hearing for compliance with the procedural due process of law requirement, for identifying the individual[s], to attest that Juan Medina and Emilio Medina, a/k/a Felix Zorilla, are for all intended purposes the same individual on grounds that:

1) there exist unquestionable evidence that the government concealed <u>Brady</u> material relevant in the matter of <u>United States v. Barbosa</u> (movant) cited 51 F.Supp.2d. 597 (E.D.Pa. 1999) and the above captioned case, and in <u>United States v. Reynoso</u>,

2) the government has already broken its credibility shield in the concealment of relevant evidentiary material,

3) under this assertion there are no assurances that the govern-

ment would, or did, afford this Honorable Court and/or Mr. Abreu the appropriate photograph for conducting the in camera inspection, and,

4) this Honorable Court, nor Mr. Abreu are prelude to the asserted identity of Emilio Medina, a/k/a Felix Zorilla, inasmuch that Mr. Abreu could not possibly have identified Juan Medina as Emilio Medina because he was not prelude to Juan Medina's identity as Emilio Medina in another circumstance.

On or about October 24, 2001, the government filed opposition of any further hearings for inspection of the photographs on the following grounds: (1) that the government afforded testimony by a DEA agent that the two individuals, Juan Medina and Emilio Medina (a/k/a Felix Zorilla) are not the same person; (2) that Mr. Abreu was afforded and shown the photographs of the (so-called) tow individuals in question and ample opportunity to study the photographs; and (3) that the District Court lacks subject matter jurisdiction inasmuch that the movant is not a party to the above captioned case.

The movant will respond to the government's position in turn. (1) The government has an inheritance principle to oppose the due process requirement, inasmuch that the credibility of the government (and government's agency) will come into question and will affect the conviction of three criminal cases. Thus, the allegation of the DEA agent cannot be called credible under the current circumstances. (2) affording and showing this Honorable Court and Mr. Abreu two separate photographs only established, under the circumstance, that the government displayed two different photographs.

-2-

Ex. B

For as established above in movant's ground (4), this Honorable Court nor Mr. Abreu is prelude to the asserted identity of Juan Medina as Emilio Medina as the movant is, or was, prelude to. And (3) for the sake of arguendo that this Honorable Court concurs with the government that it lacks subject matter jurisdiction to entertain movant's motion. Nevertheless, this Honorable Court could exercise original jurisdiction in the matter <u>Abreu v. United States</u>, No: 00-CV-3964 and grant rehearing in compliance with procedural due process, in the interest of justice and in the fairness, integrity, and public reputation of judicial proceedings.

For as the government makes clear, "The government went above and beyond the court's requirement in proving that the two individuals are not the same person." (Id Govenrment Responds Brief at 4).

However, the Petitioner (Mr. Abreu) was not afforded the same latitude to establish, in principle and/or allegation, that the two individuals alleged by the government are truly the same individual. Inasmuch that the only witness that can establish and/or confirm the Petitioner's allegations was procluded from the evidentiary hearing despite his objections.

EX.24

CONCLUSION

   For the reasons stated herein, the movant respectfully moves
this Honorable Court to grant movant's motion for a secondary in
camera inspection or exercise its original jurisdiction and order
a second evidentiary hearing to conform and/or comply with the proper
proceedings in compliance with the due process requirement.


Written and argued by:
Miguel A. Casiano, Jr.
On behalf of Movant:
Luis H. Barbosa


   I, Luis H. Barbosa, do hereby state that all herein is true
to the best of my knowledge, and supported by the law and the
Constitution of the United States, under penalty of perjury.


                              Respectfully yours,


                              Luis H. Barbosa

EX. 25

## CERTIFICATE OF SERVICE

I, Luis H. Barbosa, do hereby certify that on this 7 th day of November, 2001, I place a true and exact copy of Movant's response in the institutional mailbox addressed to all parties listed below.


cc: M. Taylor Aspinwall, AUSA
    615 Chestnut Street, Suite 1250
    Philadelphia, PA  19106-4476

    Judy Goldstein-Smith, AUSA
    615 Chestnut Street, Suite 1250
    Philadelphia, PA  19106-4476

    James Kousouros, Esq.
    Attorney at Law
    80-02 Kew Gardens Road, Suite 1030
    Kew Gardens, NY  11415

    Martha Abreu
    1110 Anderson Ave.  Apt. 2B
    Bronx, NY  10452



                                        Respectfully yours,

                                        Luis H. Barbosa

LAW OFFICES
OF

# ROCCO C. CIPPARONE, JR.

203-205 BLACK HORSE PIKE
HADDON HEIGHTS, NEW JERSEY 08035
(856) 547-2100
FACSIMILE: (856) 547-2225

ROCCO C. CIPPARONE, JR.*•

* CERTIFIED BY THE SUPREME COURT OF NEW JERSEY
AS A CRIMINAL TRIAL ATTORNEY

• ADMITTED TO PRACTICE IN NJ, PA &
FEDERAL COURTS IN NM, NJ, PA

PA OFFICE
21 SOUTH 12TH ST.
SUITE 1040
PHILADELPHIA, PA 19107

(215) 854-9600

PA MAILING ADDRESS
POST OFFICE BOX 2443
PHILADELPHIA, PA 19147

July 5, 2000

Alicia Strohl-Resnicoff, Esquire, AUSA
615 Chestnut Street/Suite 1250
Philadelphia, PA 19106

Re: United States vs. Wandy Reynoso

Dear Ms. Resnicoff:

Pursuant to Brady vs. Maryland and its progeny, on behalf of Mr. Reynoso, I am inquiring of the Government as follows:

1.    whether the individual who acted as an informant with regard to the events involving Mr. Reynoso and his co-defendants, which informant was referred to by the name Juan Medina, has ever used the name Emilio Medina in any capacity, including any connection with participation in any other investigations, his role as an informant, in any other cases involving the Drug Enforcement Administration or any other governmental agency, and including but not limited to an investigation/ case regarding an individual known as Luis Barbosa;

2.    whether the individuals known or referred to as Carlo Disla, Nestora Salcedo, or Miguel Morel had any involvement or participation in any aspect of the investigation regarding the activities which are the subject of the indictment against Mr. Reynoso or the activities of which he has been convicted by guilty plea and for which he is pending sentencing;

3.    whether government agents, and/or persons acting as informants for government agents during the course of the investigation of Wandy Reynoso and his co-defendants, acted as the supplier of cocaine to Wandy Reynoso and/or his co-defendants;

*EX · 21*

Alicia Strohl-Resnicoff, Esquire, AUSA
U.S. vs. Wandy Reynoso
July 5, 2000
Page Two

      4.     whether government agents, and/or persons acting as informants for government agents during the course of the investigation of Wandy Reynoso and his co-defendants, acted as the purchasers of cocaine in that investigation.

    These requests are being made pursuant to _Brady vs. Maryland_ and its progeny. I request that you provide to me specific written responses to the above-referenced inquiries being made on behalf of Mr. Reynoso. Of course, appropriate responses should be provided prior to the currently scheduled date for Mr. Reynoso's sentencing.

                Very truly yours,

                Rocco C. Cipparone, Jr.

RCC/mtr

cc: Wandy Reynoso (#50986-066)

EY - 28



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

---

*Alicia  Strohl Resnicoff*
*(p) 215-861-8523*
*(f) 215-861-8233*
*e-mail alicia.strohl@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

July 19, 2000

## BY FACSIMILE AND U.S. MAIL

Rocco C. Cipparone, Jr., Esq.
203-205 Black Horse Pike
Haddon Heights, NJ 08035

       *Re:    United States v. Wandy Reynoso (Criminal No. 97-380)*

Dear Mr. Cipparone:

       I am in receipt of your letter dated July 5, 2000.  I disagree that you are entitled to the information you requested pursuant to <u>Brady v. Maryland</u>.  However, as a courtesy, I consulted with the case agent, DEA Special Agent John Adams, who reviewed his file and has provided me with the following answers to your questions:

    1.     to the best of our knowledge Juan Medina has never used the name Emilio Medina;

    2.     Carlos Disla did not participate in the investigation; Nestora Salcedo did participate as did Miguel Morel;

    3.     the government did not supply the drugs involved in this transaction; and

    4.     Miguel Morel acted as the purchaser of the drugs.

                Very truly yours,

                MICHAEL R. STILES
                *United States Attorney*

                ALICIA STROHL RESNICOFF
                *Assistant United States Attorney*

C. R. DISLA  -  CROSS (Wilson)

1  way, taken care of while they know how, it wouldn't be

2  dangerous to do it.

3  Q    He's saying it would be dangerous or it wouldn't

4  be as risky?

5  A    No.   He says it's not dangerous because he, he

6  said No, it's no dangerous.   I mean if I going to be

7  export to that, I know it's going to break my stomach,

8  there's one in a million possibility I wouldn't take

9  it myself  .

10 Q    You wouldn't take it yourself if there's a one in

11 a million?

12 A    I wouldn't do it for nothing.

13 Q    But your recollection of it then is that he was

14 saying that if it was done right, there would be no

15 danger?

16 A    Yeah.   If it is done the right way like they do

17 it, it's not dangerous.

18 Q    But if it wasn't done right then there would be,

19 it would be dangerous?

20 A    I assumed that, yes, it's dangerous.

21 Q    People could die.

22 A    Of course.   They have died as far as I know.

23       THE COURT:    What is that?   I'm sorry.

24       THE WITNESS:    As far as I know there's

25 people have died from that.   I hear people that they

1   die from one of those things breaking in their

2   stomach.

3   BY MR. WILSON:

4   Q    Did Felix Zorrilla ever let you know that one of

5   his swallowers had died?

6   A    Yes.  He explained to me that.  That happened to

7   him once.

8   Q    And you knew that at the time then that this

9   conversation was taking place?

10  A    Oh, I knew that from when I was in Santa Domingo

11  with Felix Zorrilla.  That he explain to me that

12  that's the reason why he was in Santo Domingo because

13  he had to take off from Venezuela because one of the

14  swallowers died in Venezuela swallowing that thing.

15  Q    And, to the best of your knowledge, in all this

16  case, it was Mr. Zorrilla who was responsible for the

17  packaging of these drugs?

18  A    He was supposed to be packaging or Mr. Barbosa,

19  they had arranged that, because I had no control who

20  was going to be packing that stuff over there.

21  Q    Well, there was lots of conversation yesterday or

22  lots of discussion yesterday about these taped

23  conversations where there was lots of discussion about

24  was it ready; was it packaged.

25         And you indicated at one point that it was

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LUIS HUMBERTO BARBOSA,          )
                               )
          Plaintiff - Pro Se,  )
                               )
                               )
          Vs.                  )    Civil Action No. 06-0867 (CKK)
                               )    (ECF)
                               )
                               )
U.S. DEPARTMENT OF JUSTICE,    )
DRUG ENFORCEMENT ADMINISTRATION, )
                               )
          Defendant.           )
_____)

### DECLARATION OF LUIS HUMBERTO BARBOSA

I, Luis Humberto Barbosa, pro se plaintiff in the above
referenced Civil Action case, being duly sworn  and on Oath, deposes
and states as follows:

1.     I am the plaintiff acting pro se in the above captioned
Civil Action case.

2.     Plaintiff bases his declaration upon, and in support of,
all statements of allegations, previous and now new evidence
presented, in opposition to defendant's reply brief in support of
its motion for summary judgment.

3.     Defendant has not presented and/or produced any evidence
showing and/or proving contrary plaintiff's allegations.

4.     Defendant has only presented conclusory declaration
unsupported by evidence.

5.     According to the new evidence presented by plaintiff

showing and proving that previous declarations have been subjected to presenting false information to the Court. Plaintiff submits that the Court should not deem as admitted any declaration that is unsupported by evidence showing and/or proving contrary to alleged allegations that have been supported by clear genuine evidence.

6.    The defendant has not met its burden in coming forward with evidence as for releasing its burden of proof.

I, Luis Humberto Barbosa, declare the foregoing is true and correct to the best of my knowledge and belief, and is given under the penalty of perjury pursuant to 28 U.S.C. § 1746.

Respectfully submitted,

Executed on Jan. 3rd, 2007.

Luis Humberto Barbosa #29500-053
FCI Fort Dix - Camp
P.O. Box 1000
Fort Dix, New Jersey 08640

2 of 2